Argued and submitted August 31, 1993, decision of the Court of Appeals affirmed on different grounds; judgment of the circuit court reversed, and case remanded to the circuit court for further proceedings January 6, reconsideration denied February 22, 1994

Timothy M. GASTON,
*Respondent on Review,*

*v.*

William R. PARSONS, M.D.,
William E. Coit, M.D.,
*Petitioners on Review,*

*and*

GOOD SAMARITAN HOSPITAL
AND MEDICAL CENTER,
an Oregon corporation,
*Defendant.*

(CC A9011-07199; CA A71991; SC S40098)

864 P2d 1319

248

Janet M. Schroer, of Hoffman, Hart & Wagner, Portland, argued the cause on behalf of petitioners on review. With her on the petition for review was David C. Landis, of Wood, Tatum, Wonacott & Landis, Portland.

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander & McCann, Salem, argued the cause and filed a response to the petition for review on behalf of respondent on review.

David F. Sugerman, of Paul & Sugerman, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

William L. Hallmark, of Hallmark, Keating & Abbott, P.C., Portland, filed a brief on behalf of *amicus curiae* Oregon Medical Association.

Before Carson, Chief Justice, Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices, and Peterson, Senior Judge, Justice pro tempore.

UNIS, J.

Peterson, Senior Judge, Justice pro tempore, dissented and filed an opinion in which Graber, J., joined.

## UNIS, J.

The issue in this case is when the statute of limitations begins to run in a medical negligence action. Plaintiff filed this action in November 1990, seeking damages for harm suffered as a result of defendants' alleged negligence in connection with a surgical procedure performed in March 1987. Plaintiff's action was based both on (1) defendants' failure to obtain plaintiff's informed consent and (2) defendants' negligent performance of the surgery.[1] Defendants[2] moved for summary judgment on the ground that plaintiff had failed to file the action within the two-year statute of limitations, ORS 12.110(4).[3] The trial court granted the motion and entered judgment for defendants. The Court of Appeals reversed, holding that the informed consent claim was barred, but that the negligent surgery claim was not barred because the statute of limitations did not start to run on that claim until plaintiff knew or should have known of defendants' negligence. *Gaston v. Parsons*, 117 Or App 555, 844 P2d 941 (1993). We allowed defendants' petition for

---

[1] Plaintiff's complaint contains one claim for medical negligence and alleges that defendants were negligent in one or more of four particulars. The first three specifications alleged are that defendants were negligent in performing the surgery. The fourth particular is that defendants failed to obtain plaintiff's informed consent to the surgery.

For clarity, this opinion will refer to plaintiff's claim based on the alleged failure to warn of risks as the "informed consent" claim and to the claim based on negligent performance of the surgery as the "negligent surgery" claim.

[2] For the purposes of this appeal, defendants are Drs. Parsons and Coit. Plaintiff's claim against defendant Good Samaritan Hospital was dismissed, and the hospital is not a party in this appeal.

[3] ORS 12.110(4) provides:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

Thus, in the absence of fraud, deceit, or misleading representation, the statute of repose for medical negligence claims requires an action to be filed within five years of the treatment or surgery. In no event may an action for medical negligence be brought more than ten years after the event or occurrence forming the basis for the claim. ORS 12.115.

review.[4] We affirm the decision of the Court of Appeals on different grounds.

On review of a summary judgment, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Christensen v. Murphy*, 296 Or 610, 613, 678 P2d 1210 (1984). In reviewing the trial court's ruling on a motion for summary judgment, we view the evidence and all reasonable inferences in the light most favorable to the non-moving party (plaintiff in this case). *Stephens v. Bohlman*, 314 Or 344, 346-47, 838 P2d 600 (1992).

Plaintiff was a partial quadriplegic whose only functioning limb was his left arm. Plaintiff sought medical treatment from defendants for muscle spasms in his lower body. Defendant Parsons (Parsons) suggested a procedure that involved a spinal injection of a chemical solution to deaden the nerves that were causing the muscle spasms. Before the surgery, Parsons informed plaintiff of certain risks to the procedure, but not of any risk of possible loss of function in plaintiff's arm. Defendants performed the procedure on March 12, 1987. After the surgery, plaintiff noticed that his left arm was numb and did not function. Parsons assured plaintiff that the loss of function in his left arm was temporary and that use of his arm would return in six months to two years.

Plaintiff did not recover the use of his left arm within two years of the surgery. Plaintiff filed this action on November 14, 1990, alleging that defendants were negligent both in failing to obtain plaintiff's informed consent before the surgery and in negligently performing the surgery. Defendants moved for summary judgment, asserting that plaintiff's claims were barred by the statute of limitations, ORS 12.110(4), because they were filed more than two years after plaintiff became aware that his left arm was numb and did not function.

ORS 12.110(4) requires actions for claims arising from medical treatment to be "commenced within two years from the date when the injury is first discovered or in the

---

[4] Because plaintiff has not petitioned for review with regard to his informed consent claim, that claim is not before this court.

exercise of reasonable care should have been discovered.''[5] We need only to determine if a genuine issue of material fact exists as to when plaintiff discovered or in the exercise of reasonable care should have discovered his "injury," as that word is used in ORS 12.110(4). We find that a genuine issue of fact does exist.

■ In interpreting a statute, we seek to give effect to the intent of the legislature. ORS 174.020. The first step of that process is to examine the text and the context of the provision itself and other related statutes. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-11, 859 P2d 1143 (1993). Context includes case law interpreting those statutes. *See State v. Sullens,* 314 Or 436, 443, 839 P2d 708 (1992) (" 'When this court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment' ") (quoting *Walther v. SAIF,* 312 Or 147, 149, 817 P2d 292 (1991)).

In examining the text and the context of ORS 12.110(4), we note that "injury" is not defined by statute or by case law. We also note that "injury" appears in other statutes of limitations. *See* ORS 12.110(1) (general tort); ORS 30.275(8) (tort claims against public bodies). This court has recognized that the discovery rule applies to each of those statutes. *See Dowers Farms v. Lake County,* 288 Or 669, 681, 607 P2d 1361 (1980) (ORS 30.275); *U.S. Nat'l Bank v. Davies,* 274 Or 663, 668-69, 548 P2d 966 (1976) (ORS 12.110(1)). This court's prior decisions indicate that the use of the word "injury" in statutes of limitations does not refer to injury in the ordinary sense — that is, physical harm. Instead, those decisions have recognized that discovery of "injury" is comprised of different components, some of which are harm, identity of the tortfeasor, and causation. *See, e.g.,*

---

[5] We decide this case on the basis of the statute of limitations contained in the first sentence of ORS 12.110(4). The parties did not raise any issue regarding the "fraud, deceit or misleading representation" exception contained in the second sentence of ORS 12.110(4). That exception has no application to the present case, however. The "fraud, deceit or misleading representation" provision is an exception to the five-year statute of repose found in the second sentence of ORS 12.110(4). By its terms, the exception is relevant only when "there has been no action commenced within five years [of the treatment] because of fraud, deceit or misleading representation." Because this action was filed within five years of the surgery, we need not address the meaning of that exception to the statute of repose in ORS 12.110(4).

*Dowers Farms v. Lake County, supra,* 288 Or at 669 (discovery of harm); *Adams v. Oregon State Police,* 289 Or 233, 239, 611 P2d 1153 (1980) (identity of the tortfeasor); *Schiele v. Hobart Corporation,* 284 Or 483, 490, 587 P2d 1010 (1978) (cause of harm).

■ In interpreting the text of a provision, we also consider "rules of construction that bear directly on the interpretation of the statutory provision in context." *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611. One such well-established rule is that words in a statute that have a well-defined legal meaning are to be given that meaning in construing the statute. *State v. Dumond,* 270 Or 854, 858, 530 P2d 32 (1974); *Cordon v. Gregg,* 164 Or 306, 311-12, 97 P2d 732, 101 P2d 414 (1940). As used in ORS 12.110(4), "injury" is such a word. In the tort context, in which ORS 12.110(4) applies, "injury" is defined as the "invasion of any legally protected interest of another." Restatement (Second) Torts § 7(1) (1965). In other words, an "injury" is a legally cognizable harm.

■ The context of ORS 12.110 supports this interpretation of "injury." Another rule of construction that bears directly on how to read the text of the statute is the maxim *ejusdem generis,* which provides that where general words follow the enumeration of particular classes of things, the general words are to be construed as applicable to things of the same general nature or class. *See State v. Brantley,* 201 Or 637, 645, 271 P2d 668 (1954) (stating maxim). ORS 12.110(1) provides in part: "An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract * * * shall be commenced within two years." Applying the rule of *ejusdem generis* to ORS 12.110, the term "injury" falls within the class of words that precede it — in this instance, torts. Thus, our reading of "injury" in ORS 12.110(4) is consistent with that word's meaning in ORS 12.110(1) (*i.e.,* "injury" means legally cognizable harm).

However, the text and context of ORS 12.110(4) are not unambiguous. We therefore consider legislative history. *See PGE v. Bureau of Labor and industries, supra,* 317 Or at 611-12 (when text and context are ambiguous, it is proper to consider legislative history). ORS 12.110(4) was first enacted

in 1967. Or Laws 1967, ch 406, § 1. The legislature's understanding of the word "injury" at the time that statute was adopted is dispositive, unless subsequent amendments have altered that meaning. The original version of the statute provided:

> "An action to recover damages for *injuries* to the person where in the course of any medical, dental, surgical or other professional treatment or operation, any foreign substance other than flesh, blood, or bone, is introduced and is negligently permitted to remain within the body of a living human person, causing *harm*, shall be commenced within two years from the date when the *injury* is first discovered or in the exercise of reasonable care should have been discovered provided that such action shall be commenced within seven years from the date of the treatment or operation upon which the action is based." *Former* ORS 12.110(4) (1967) (emphasis added).

Thus, the original version of ORS 12.110(4) made clear that "injury" was what formed the basis for an action, *i.e.*, legally cognizable harm, and "harm" was what was caused by the "injury," *i.e.*, untoward effects.

ORS 12.110(4) was intended to codify the discovery rule announced by this court in *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966). *Josephs v. Burns & Bear*, 260 Or 493, 491 P2d 203 (1971).[6] In examining *Berry*, we can discern what the legislature intended by the word "injury" in ORS 12.110(4). In *Berry*, this court held that the plaintiff, who suffered pain as a result of a needle negligently left in her abdomen following a hysterectomy, was not barred from recovery as a matter of law by the statute of limitations because the statute did not begin to run until the needle was discovered. This court explained:

---

[6] Before *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966), this court had held that a claim for negligent injury accrued at the time of the negligence, rather than upon discovery of the injury. *See, e.g., Vaughn v. Langmack*, 236 Or 542, 390 P2d 142 (1964). *Berry* dealt with the situation in which a surgeon left foreign objects within a patient. The original statutory version of the discovery rule contained the same limitation. Or Laws 1967, ch 406, § 1. In *Frohs v. Greene*, 253 Or 1, 452 P2d 564 (1969), this court expanded the holding in *Berry* to cover negligent treatment and diagnosis as well. ORS 12.110(4) was later amended to address all injuries to the person from medical negligence. Or Laws 1969, ch 642, § 1. *See Duncan v. Augter*, 286 Or 723, 596 P2d 555 (1979) (discussing legislative history of ORS 12.110(4)).

"To say that a cause of action accrues to a person when she may maintain an action thereon and, at the same time, that it accrues before she has or can reasonably be expected to have knowledge of any wrong inflicted upon her is patently inconsistent and unrealistic. She cannot maintain an action before she knows she has one. To say to one who has been wronged, 'You had a remedy, but before the wrong was ascertainable to you, the law stripped you of your remedy,' makes a mockery of the law." *Berry v. Branner, supra,* 245 Or at 312.

In *Berry v. Branner, supra,* 245 Or at 312, this court referred to discovery of the "wrong" in holding that the statute of limitations does not begin to run until the plaintiff can "reasonably be expected to have knowledge of any *wrong* inflicted.*" (Emphasis added.) Similarly, in *Frohs v. Greene,* 253 Or 1, 7, 452 P2d 564 (1969), which the legislature codified in 1969,[7] this court spoke in terms of "tortious conduct" when it held that the statute does not begin to run until plaintiff is on notice of defendant's *"tortious* conduct." (Emphasis added.) Nothing in the subsequent amendment of ORS 12.110(4) indicates any legislative intent to alter the original meaning of the word "injury."

In light of the text and the context of ORS 12.110(4) and the legislative history of that provision, we hold that the legislature intended the word "injury," as used in ORS 12.110(4), to mean legally cognizable harm. In the tort context of ORS 12.110(4), a harm is legally cognizable if it is the result of tortious conduct. Therefore, "injury," as used in ORS 12.110(4), consists of three elements: (1) harm; (2) causation; and (3) tortious conduct.[8]

To discover a particular element of legally cognizable harm, the plaintiff does not need to know to certainty that each particular element exists. The discovery rule is designed

---

[7] *See supra* note 6.

[8] Although "tortious conduct" is an element of injury under the discovery rule, a plaintiff does not need to identify a particular theory of recovery before the statute of limitations begins to run. All that is required is that the plaintiff discover that some invasion of the legally protected interest at stake has occurred. For example, when a plaintiff discovers that he or she has wrongfully been harmed by the conduct of another, he or she need not further discover whether the defendant's act was intentional or negligent for the statute of limitations to begin to run. Discovery that the plaintiff's legally protected interest to be free from physical harm at the hands of another had been infringed is sufficient to satisfy the tortious conduct element of the discovery rule.

to give plaintiffs a reasonable opportunity to become aware of their claim. *See Frohs v. Greene, supra,* 253 Or at 4 (discovery rule affords opportunity for plaintiff to discover that claim exists). Actual knowledge that each element is present is not required. On the other hand, a mere suspicion is insufficient to begin the statute of limitations to run. We believe that a quantum of awareness between the two extremes is contemplated by the statute. Therefore, the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists.

We emphasize that this is an objective test. In most cases, the inquiry will concern what a plaintiff should have known in the exercise of reasonable care. In such cases, the relevant inquiry is how a reasonable person of ordinary prudence would have acted in the same or similar situation. *See Woolston v. Wells,* 297 Or 548, 557, 687 P2d 144 (1984) (reasonable care means what a reasonable person of ordinary prudence would do in the same or similar circumstances). Relevant to this analysis will be a plaintiff's failure to make a further inquiry if a reasonable person would have done so. The discovery rule does not protect those who sleep on their rights, but only those who, in exercising the diligence expected of a reasonable person, are unaware that they have suffered legally cognizable harm.

We now consider whether a genuine issue of material fact exists in this case as to plaintiff's discovery of the "tortious conduct" element of legally cognizable harm. Whether a reasonable person of ordinary prudence would be aware of a substantial possibility of tortious conduct is a question of fact that depends upon the nature of the harm suffered, the nature of the medical procedure, and other relevant circumstances. The nature of the harm suffered is important in determining whether a reasonable person would have been aware of a substantial possibility of tortious conduct. Although, in many instances, suffering an untoward result after surgery may put a reasonable person on notice of tortious conduct, certain untoward effects can "mask" tortious conduct. A reasonable person that experiences symptoms that are incidental to a

particular medical procedure may not be aware that he or she has been a victim of tortious conduct:

> "Normally, knowledge of injury as a result of defendants' actions would put the injured party on sufficient notice of defendants' tortious conduct to commence the running of the statute. However, immediate, adverse side effects commonly result from medical treatment given to gain long-range and more important benefits. Knowledge of momentary, adverse effects which are immediately controlled would not put plaintiff on notice as a matter of law of tortious conduct by defendants." *Frohs v. Greene, supra,* 253 Or at 7.

Assurances made by the attending physician may also have a bearing on whether a reasonable person would be aware of a substantial possibility of tortious conduct. *See id.* at 6-7 (statements by physicians considered in assessing whether the plaintiff had discovered claim). A physician's assurances may be particularly influential on a plaintiff because the physician-patient relationship is "a relationship of trust and confidence * * * in which continued treatment or other resort to the skills of the defendant is required." *Cavan v. General Motors,* 280 Or 455, 458, 571 P2d 1249 (1977). If the physician makes a representation on which a plaintiff reasonably relies, it could have the effect of delaying a reasonable person from becoming aware of a substantial possibility of tortious conduct.[9]

---

[9] The significance of the physician's statements is that they are circumstances to be considered in determining the reasonableness of the plaintiff's actions. Any statement made by the physician (true, untrue, misleading, or otherwise) is to be considered along with other circumstances (*e.g.*, the nature of the harm, the nature of the surgery performed) in evaluating when a plaintiff reasonably should have discovered that he or she has suffered a legally cognizable harm.

Our decision is not based upon the statute of repose in the second sentence of ORS 12.110(4), which contains express language regarding discovery of "fraud," "deceit" and "misleading representations." As we have noted, the "fraud, deceit or misleading representation" language applies only to the statute of repose set forth in the second sentence of ORS 12.110(4) and does not apply, if at all, until five years after the surgery or treatment. *See supra* note 5. Moreover, the legal inquiries under the two sentences of ORS 12.110(4) are different. Under the first sentence of ORS 12.110(4) (limitations), the statute does not begin running until the plaintiff discovers or in the exercise of reasonable care should have discovered "injury." The "discovery rule" operates to delay the running of the statute if the plaintiff reasonably fails to discover "injury" for any reason. Under the second sentence of ORS 12.110(4) (repose), the statute begins to run when the plaintiff discovers or in the exercise of reasonable care should have discovered the fraud, deceit or misleading representation. The "discovery rule" in the second sentence operates to delay the statute only if the reason for the plaintiff's delay is fraud, deceit, or misleading

■ A genuine issue of material fact exists in this case as to when plaintiff in the exercise of reasonable care should have discovered a substantial possibility of tortious conduct.[10] Plaintiff's symptoms were not so clearly unrelated to the procedure performed that as a matter of law a reasonable person would believe that the cause was tortious conduct. In addition, Parsons assured plaintiff that the numbness and loss of use that plaintiff experienced in his left arm was temporary. The assurance raises a genuine issue of fact as to its effect upon a reasonable person. The fact that the assurance came after surgery, rather than before, did not put plaintiff on notice as a matter of law of tortious conduct. Nor can we say that plaintiff was, as a matter of law, unjustified in relying on Parsons's assurances. As this court stated in *Schiele v. Hobart Corporation, supra,* 284 Or at 491, "[w]e cannot * * * say as a matter of law that anyone who is optimistic about his condition's taking a turn for the better is unreasonable."[11]

Defendants further argue that plaintiff's negligent surgery claim is barred as a matter of law because plaintiff's informed consent claim was barred by the statute of limitations. The Court of Appeals held that plaintiff's informed consent claim was barred by the statute of limitations because "[t]hat claim accrued when plaintiff discovered that he had lost the function of his arm. He knew at that time that he had not been warned of that risk." *Gaston v. Parsons, supra,* 117 Or App at 558. Because both claims stem from defendants' alleged negligent conduct in relation to the surgery, and because plaintiff suffered only one harm as a result thereof, defendants argue that plaintiff's claims are a single

---

statement. In this case, we speak only of the utility of the physician's representations in analyzing discovery of "injury" for the purposes of the statute of limitations in the first sentence of ORS 12.110(4).

[10] A material question of fact also exists as to whether plaintiff had actual knowledge of legal injury more than two years before bringing this action. Viewing the record in the light most favorable to plaintiff, we cannot say that as a matter of law he had such knowledge.

[11] Defendants argue that *Duyck v. Tualatin Valley Irrigation Dist.,* 304 Or 151, 742 P2d 1176 (1987), dictates a different result in this case. We disagree. That case was a negligent misrepresentation case decided under a different statute, ORS 30.275. Moreover, the language in *Duyck* upon which defendants rely for their argument is dicta.

claim that accrued when plaintiff became aware of the numbness and the loss of use of his left arm. We disagree.

In analyzing when a claim accrues for statute of limitations purposes, the issue is when the plaintiff knew or should have known facts that would make a reasonable person aware of a substantial possibility that he or she had suffered damage as the result of tortious conduct. Informed consent claims typically require knowledge of different facts than do negligent surgery claims. The factual basis for an informed consent claim is that a defendant did not warn a plaintiff before surgery of certain risks and that, regardless of what degree of care was exercised by the defendant, the plaintiff was harmed because, with more complete information, he or she would not have consented to the surgery. *See Arena v. Gingrich*, 305 Or 1, 4, 748 P2d 547 (1988) (discussing causation element of informed consent claims). In contrast, a negligent surgery claim is based on a defendant's failure to exercise the appropriate degree of care in the performance of the surgery, regardless of the risks of which the plaintiff has been warned. *See Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 14-15, 734 P2d 1326 (1987) (discussing elements of negligence claim based upon "special relationship"). Although in some cases, and this is one, the two claims may be closely linked, materially different facts start the running of the statute of limitations for each claim.

Not only can the claims be factually distinct, but they are also legally distinct. Each claim arises from the violation by a defendant of different legal interests of a plaintiff. Informed consent concerns a plaintiff's right to control what is done to his or her body,[12] while negligent surgery reflects a

---

[12] This interest was aptly stated by Justice Cardozo for the New York Court of Appeals:

"Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages."

*Schloendorff v. New York Hospital*, 211 NY 125, 129, 105 NE 92 (1914), *overruled on other grounds, Bing v. Thunig*, 2 NY2d 656, 163 NYS2d 3, 143 NE2d 3 (1957).

Informed consent and negligent surgery claims have different origins. Claims for lack of informed consent were originally based on a theory of battery, but more recently have been considered a form of negligence claims. *Getchell v. Mansfield*, 260 Or 174, 177-78, 489 P2d 953 (1971). *See also* 4 Speiser, Krause & Gans, The American Law of Torts §§ 15:70-15:77 (1987) (discussing doctrine of informed consent).

plaintiff's right to be free from physical harm resulting from negligence in the performance of surgery. Indeed, the two torts have different standards of care that are defined by different statutes. *See* ORS 677.095 (general duty of care for physicians); ORS 677.097 (informed consent). Awareness of tortious conduct is one element of the discovery rule, and the plaintiff need not identify a particular theory for the statute of limitations to begin to run. However, when two different legally protected interests are at stake, awareness of a violation of one interest does not put a plaintiff on notice as a matter of law of the possible violation of other distinct legally protected interests. Each claim must be analyzed separately to determine if a plaintiff knew or should have known facts that would make a reasonable person aware of a substantial possibility that the legally protected interest had been invaded.

■    For the purpose of the statute of limitations, an informed consent claim is not the same as a negligent surgery claim. Just because one specification of negligence in a complaint is barred by the statute of limitations, it does not necessarily follow that a specification of negligence having a different factual or legal basis is barred. *See Little v. Wimmer*, 303 Or 580, 585, 739 P2d 564 (1987) (although three negligence claims arose out of a single automobile collision, claims based on negligent design and construction of intersection were time-barred, but claim based on negligent maintenance was not). In this case, plaintiff's medical negligence claim is not barred as a matter of law as a consequence of his informed consent claim being time-barred.

We hold, therefore, that in this case it is a question of fact for the jury to decide whether plaintiff unreasonably delayed filing this action with regard to the negligent surgery claim. The jury must decide whether, considering all the relevant circumstances, plaintiff was aware or in the exercise of reasonable care should have been aware of a substantial possibility that he had been harmed as the result of tortious conduct. Any other holding would have the effect of saying that as a matter of law a person must file suit within two years of experiencing any difficulties following surgery, regardless of assurances made by the physician. Patients normally should be able to rely on assurances made by their physician.

Any other rule would be unfair and unrealistic. The discovery rule is a doctrine of fairness:

> "It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he has had an opportunity to discover that it exists. * * * We do not believe that the danger of spurious claims is so great as to necessitate the infliction of injustice on persons having legitimate claims which were undiscoverable by the exercise of ordinary care prior to the lapse of two years from the time of the act inflicting the injury." *Frohs v. Greene, supra,* 253 Or at 4.

When a person has major surgery, he or she is at a tremendous informational disadvantage that impedes the opportunity to discover a claim:

> "A patient who undergoes an operation is taken into the surgery of a hospital and is given anesthesia which renders him unconscious. He knows nothing of what takes place in the surgery. All of his intimates, such as relatives, friends, and neighbors are excluded — and properly so — from the operating room. Accordingly, all knowledge of what takes place in the course of the operation * * * is exclusively in the possession of the surgeon." *Vaughn v. Langmack,* 236 Or 542, 582, 390 P2d 142 (1964) (Rossman, J., dissenting).

The discovery rule takes that into account and strikes an appropriate balance between protecting plaintiffs and defendants.

> "The objective of a statutory limitation on the time within which an action may be brought is, in malpractice cases, the protection of medical practitioners from the assertion of stale claims. We do not believe the legislature intended to limit patients asserting malpractice claims, who by the very nature of the treatment had no way of immediately ascertaining their injury, to the same overall period of time that is allowed for bringing other tort actions that are normally immediately ascertainable upon commission of the wrong. The protection of the medical profession from stale claims does not require such a harsh rule. The mischief the statute was intended to remedy was delay in the assertion of a legal right by one who had slumbered for the statutory period during which process was within his reach." *Berry v. Branner, supra,* 245 Or at 312-13.

Our holding in this case does not expose physicians to an unending threat of litigation. We note that in the absence

of fraud, deceit, or misleading representation, ORS 12.110(4) provides a statute of repose for medical negligence cases of five years from the date of treatment. Nothing in our holding extends that five-year period.

We conclude that a genuine issue of material fact exists in this case as to when plaintiff discovered or in the exercise of reasonable care should have discovered "injury." Plaintiff's negligent surgery claim is not barred as a matter of law by the statute of limitations. The trial court erred in granting summary judgment for defendants.

The decision of the Court of Appeals is affirmed on different grounds. The judgment of the circuit court is reversed, and this case is remanded to the circuit court for further proceedings.

**PETERSON, J. pro tempore,** dissenting.

Although I agree with the latter part of the majority opinion (concerning implied consent), I do not agree with the first part, which concerns ORS 12.110(4). I therefore dissent.

ORS 12.110(4) states that, in medical malpractice cases, the statute of limitations begins to run "the date when the *injury* is first *discovered* or in the exercise of reasonable care should have been discovered." (Emphasis added.) The majority holds that, in medical negligence actions,

"the statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that * * * tortious conduct * * * exists." 318 Or at 256.

I believe that the words of ORS 12.110(4) — "when the *injury* is first *discovered*" (emphasis added) — mean knowledge of a causal relationship between the event and harm resulting from the event, not knowledge of the defendant's fault.

ORS 12.110(1) and (4) are the relevant statutes. They provide:

"(1) An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the

limitation shall be deemed to commence only from the discovery of the fraud or deceit.

"(4)  An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. However, notwithstanding the provisions of ORS 12.160, every such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

ORS 12.110(1) and (4) contain virtually identical clauses. Subsection (1) refers to "injury to the person." Subsection (4) refers to "injuries to the person." Subsection (4) also states that the action "shall be commenced within two years from the date when *the injury is first discovered or in the exercise of reasonable care should have been discovered.*" (Emphasis added.)

In considering the text and context of ORS 12.110, it is fair to assume that the legislature, in 1967, 1969, and 1971, intended the subsection (4) phrase "injuries to the person" to have the same meaning as the phrase "injury to the person" contained in subsection (1). In considering the context, the majority states that "[c]ontext includes case law interpreting those statutes" because, " '[w]hen this court interprets a statute, that interpretation becomes a part of the statute as if written into it at the time of its enactment.' " 318 Or at 252 (citing *State v. Sullens*, 314 Or 436, 443, 839 P2d 708 (1992) (quoting *Walther v. SAIF*, 312 Or 147, 149, 817 P2d 292 (1991))). I therefore examine the precedents of this court before 1967 to determine whether this court, before 1967, had interpreted the phrase "injury to the person."

*Current* ORS 12.110(1) has been a part of the Oregon Code since 1862. General Laws of Oregon, ch 1, § 3, p 140 (Deady 1845-1864), read substantially the same as *current* ORS 12.010, requiring that actions be filed within a specified time "after the cause of action shall have accrued." Another section prescribed a six-year limitation for "[a]n action for

criminal conversation, or for any other *injury to the person* or rights of another, not arising on contract, and not hereinafter enumerated" (emphasis added), language very similar to *current* ORS 12.110(1). General Laws of Oregon, ch 1, § 6, p 141 (Deady 1845-1864). The six-year limitation of section 6 was amended in 1870 to a two-year period. *See* General Laws of Oregon, ch 1, § 8, p 107 (Deady & Lane 1843-1872).

Before 1965, the predecessor statutes to *current* ORS 12.110(1) were construed several times to determine when "injury" occurred, thus starting the running of the statute of limitations contained in ORS 12.110(1). Those cases consistently held that the "injury," as used in ORS 12.110(1), occurred when the wrongful act occurred.

*Hood v. Seachrest*, 89 Or 457, 174 P 734 (1918), and *Schwedler v. First State Bk. of Gresham*, 92 Or 33, 179 P 671 (1919), were fraud cases arising from the sale of land. In both cases, the court held that the "injury" occurred at the time of the fraud, not the discovery of the fraud. In 1919, responding to those two decisions, the Legislative Assembly amended the statute by adding the words "provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit." Or Laws 1919, ch 122, § 8. That language remains in *current* ORS 12.110(1).

Respecting the 1919 amendment to what is now ORS 12.110(1), *Vaughn v. Langmack*, 236 Or 542, 547-48, 390 P2d 142 (1964), stated:

> "Logic and common sense make unavoidable the conclusion that when the legislature, evidently prompted by the decision in *Hood v. Seachrest*, amended the statute in 1919 so as to provide that the time limited for bringing an action based upon fraud or deceit should commence to run only from the discovery of the fraud or deceit, it intended that, as to all other actions, the provision that the time commences to run from the accrual of the cause of action should remain unchanged."

In *Wilder v. Haworth*, 187 Or 688, 213 P2d 797 (1950), the court was required to decide, under a predecessor

statute to *current* ORS 12.110(1),[1] whether injuries stemming from radiation treatment performed in 1937 occurred
on the date of the treatment or the date that plaintiff discovered that she had been harmed by the treatment, the date of
discovery being in 1946. The court held that two years from
the date of the injury meant two years from the date of
treatment:

> "Defendant subjected plaintiff to X-ray therapy on one day
> only — January 11, 1937 * * *. * * * The statute of limita
> tions commenced to run on that day, and the period of
> limitation expired January 12, 1939." 187 Or at 695.

*Vaughn v. Langmack, supra*, also considered when
the statute of limitations begins to run under ORS 12.110(1).
The claim was that a surgeon negligently left a surgical needle
in plaintiff's abdomen during hernia surgery. The surgery
was on July 7, 1958. The needle was discovered over four
years later, in October 1962. The plaintiff contended that
"his cause of action did not accrue until he knew or should
have known of the injury." 236 Or at 544.

The *Vaughn* opinion contains a thorough discussion
of the case law and legislative antecedents of ORS 12.110(1),
some of which is summarized above. The court held that the
statute of limitations began to run the day of the surgery,
when the needle was left in the abdomen:

> "We are told, however, that damage is the gist of the
> action of malpractice and that it cannot be determined from
> the allegations of the complaint when any damage was
> suffered by the plaintiff as the result of the defendant's
> negligence in closing the wound without first removing the
> surgical needle 'lodged [as the complaint says] in plaintiff's
> abdomen.' This theory appears to be introduced as a means
> of seeming to avoid the fault of judicial legislation, concern
> ing which more will be said later; though, as it seems to us, it
> is only another way of saying that the cause of action does not
> accrue until discovery of the injury. For we doubt that it
> would be contended that if the plaintiff became aware of the
> presence of the needle in his body the day after the wrongful
> act he would not then have had a cause of action against the
> defendant for his want of care or skill, even though up to that
> time the plaintiff had experienced no pain or discomfort from

---

[1] OCLA § 1-206 was, in substance, identical to *current* ORS 12.110(1).

that cause. It would seem that he, at least, would have had the right to sue immediately to recover for the cost of an operation for removal of the needle and the pain and suffering incident to such an operation." *Id.* at 552-53.

*Berry v. Branner*, 245 Or 307, 312-13, 316, 421 P2d 996 (1966), which expressly overruled *Vaughn v. Langmack* and impliedly overruled *Wilder v. Haworth*, held that an action for damages against a surgeon who negligently left a needle in the plaintiff's abdomen accrued at the time of discovery of harm. But the court did not say that "injury" then occurred. *Berry* simply held that the statute did not begin to run until the plaintiff had actual or constructive knowledge of the injury.[2]

Even though some of those precedents have been overruled concerning their holdings on discovery, their discussion of when "injury" occurs remains relevant. "Injury," within the meaning of ORS 12.110, occurs when the negligent act occurs, *viz.,* when the needle is left in the incision, the tainted blood introduced into the patient, or when the nerve is damaged in surgery. Before 1966, knowledge of injury was irrelevant to when the statute of limitations begins to run. Presently, by case law and by amendment of the statute, the statute of limitations does not begin to run, even though injury has occurred, until the plaintiff has actual or constructive knowledge of injury.

Without looking at the legislative history, the meaning of ORS 12.110(4) is clear. The word "injury" remains the same — occurrence of harm. The additional words of the first sentence — "shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered" — essentially mean two years from actual or constructive knowledge of harm. Knowledge of a defendant's fault or tortious conduct is not required.

The majority concludes, however, that ORS 12.110(4) is ambiguous, 318 Or at 253, and therefore looks to the legislative history, concluding that "injury," as used in

---

[2] As discussed below, the Legislative Assembly amended ORS 12.110 in 1967 to limit the time within which actions must be brought against doctors for leaving foreign objects in a surgical patient.

ORS 12.110(4), requires knowledge of "tortious conduct." 318 Or at 255. The majority's reading of the legislative history is flatly wrong. In amending ORS 12.110 in 1965, 1967, and 1969, the legislature did not change the meaning of the word "injury." The legislature simply made an exception — as it had earlier in 1919 for fraud — for cases in which the patient does not discover the injury until sometime after the injury occurs.

In 1966, as stated above, *Berry v. Branner, supra,* overruled *Vaughn v. Langmack, supra,* and held that the statute of limitations on a patient's claim against a surgeon for leaving a needle in her abdomen during surgery did not begin to run until the plaintiff knew or should have known of the needle left in her abdomen during the earlier surgery. That rule came to be known as the "discovery rule."

The medical profession and the medical insurance industry were concerned that adoption of the discovery rule created open-ended liability, with no applicable statute of limitations. Therefore, in 1967, the Oregon Medical Association sought legislation that would, in cases involving foreign objects: (1) limit the period of time, after discovery of an injury to the person, within which an action must be brought; and (2) limit the total period of time following a "treatment or operation" within which an action must be brought. The result of the legislation was to create a two-year period of limitation after discovery of the foreign object and a total period of limitation of seven years after the treatment or operation. The 1967 amendment was limited to "injuries to the person where in the course of any medical, dental, surgical or other professional treatment or operation, *any foreign substance * * * is introduced and is negligently permitted to remain within the body.*" Or Laws 1967, ch 406, § 1 (emphasis added).

After the 1967 amendment, ORS 12.110(4) read:

> "An action to recover damages for injuries to the person where in the course of any medical, dental, surgical or other professional treatment or operation, any foreign substance other than flesh, blood or bone, is introduced and is negligently permitted to remain within the body of a living human person, causing harm, shall be commenced within two years from the date when the injury is first discovered or in the

exercise of reasonable care should have been discovered; provided that such action shall be commenced within seven years from the date of the treatment or operation upon which the action is based."

The legislative intent of the 1967 amendment was that the period of limitation begins to run from knowledge of the presence of the "foreign substance" — the scissors, sponge, needle, or the like — not from knowledge of tortious conduct.[3]

That brings us to 1969. Once again, the medical profession was back with proposed legislation to further limit the scope of the discovery rule. The legislative history shows that, in *Frohs v. Greene*, 253 Or 1, 452 P2d 564 (1969), the Supreme Court extended the discovery rule to include negligent diagnosis and treatment. The *Frohs* opinion stated the issue as follows:

"This court adopted the discovery rule in foreign object cases in *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966). The question is whether the holding of that case should be extended to cases of negligent diagnosis or treatment." 253 Or at 3.

The court held:

"This court in the case of *Wilder v. Haworth*, 187 Or 688, 213 P2d 797 (1950), refused to apply the discovery rule in a case of negligent diagnosis and treatment. * * *

"On a theoretical basis it is impossible to justify the applicability of the discovery rule to one kind of malpractice [foreign objects] and not to another. The reason for the application of the discovery rule is the same in each instance. * * * We therefore overrule our former decision in *Wilder v. Haworth, supra,* and any similar decisions." *Id.* at 3-4.[4]

In 1969, the medical profession was concerned about the discovery rule's applicability to diagnosis and treatment for the very reason that it earlier sought the 1967 change in cases involving foreign objects — the absence of any time

---

[3] The majority states that "ORS 12.110(4) was intended to codify the discovery rule announced by this court in *Berry v. Branner.*" 318 Or at 254. That is incorrect. Although one effect of the 1967 amendment was to codify the *Berry v. Branner* holding (insofar as discovery of the foreign object is concerned), the manifest legislative intention was to place limits on the time allowed for filing such claims.

[4] In a footnote, the court noted the 1967 amendment to ORS 12.110. *Frohs v. Greene, supra,* 253 Or at 4 n 2.

limit on "discovered" medical malpractice claims based on negligent diagnosis or treatment. It therefore sought legislation similar to the legislation passed two years earlier, legislation that would apply the same time limits to claims based on diagnosis or treatment. The legislative history of the House Committee on the Judiciary, April 23, 1969, contains this entry concerning House Bill 1797:

> "John Misko, attorney and lobbyist, testified on the above bill, pointing particularly to a recent Supreme Court decision which he felt would affect lawyers as well as physicians. He stated that since the opinion says a suit does not need to commence until the plaintiff knows he has a cause of action that both lawyers and *doctors are caught with a statute of limitations which will never run.*" Minutes, House Committee on Judiciary 1 (April 23, 1969) (emphasis added).

After the measure passed the House of Representatives, there was a hearing in the Senate Judiciary Committee on May 12, 1969:

> "Mr. John Misko explained that House Bill 1797 was introduced as the result of a Supreme Court decision, *Frohs v. Greene*, [*supra*], in which it was held that the discovery rule in medical malpractice cases extended to cases of negligent diagnosis or treatment. In that case the plaintiff filed her complaint on May 10, 1967, alleging that in 1951 the defendants negligently gave her injections of penicillin when they knew or should have known that she was allergic to that drug." Minutes, Senate Judiciary Committee 2 (May 12, 1969).

As enacted in 1969, ORS 12.110(4) was amended to read:

> "An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered; provided that such action shall be commenced within seven years from the date of the treatment, omission or operation upon which the action is based." Or Laws 1969, ch 642, § 1.

That legislative history confirms that the purpose of the 1969 amendment was to *limit* recoverability for medical malpractice tort claims under the "discovery" rule in two ways: (1) by imposing a two-year limit following discovery of an injury to the person, and (2) by imposing a seven-year

outer limit on *all* discovery claims. There is no hint, no suggestion, in the record of any legislative intent that the statute of limitations not begin to run until an injured person discovers (I use the majority's term) "tortious conduct."

The medical profession remained concerned about the discovery rule. It returned in 1971, seeking further restrictions on the discovery rule. Initially, it sought legislation reducing the seven-year outer limit on discovery claims to five years. The medical profession had a new lobbyist, Tom Cooney, who testified:

> "Mr. Cooney gave a history of the statute of limitations in medical malpractice cases and advised the committee that the purpose of the bill is to reduce the cost of medical malpractice insurance by making the doctors liable for a shorter period of time. If a very lengthy period has passed, it is becoming increasingly difficult to defend the case. Defense of malpractice cases is very expensive if a lawsuit is filed, whether or not the doctor is ultimately held to be liable." Minutes, House Committee on Judiciary, Subcommittee II, p 1 (April 15, 1971).

The minutes also contain this entry:

> "Dr. Roy Payne, chairman of the Public Policy Committee, Oregon Medical Association, advised that the OMA does not depend exclusively on this type of legislation to combat the rising costs of malpractice insurance, as they have an educational program for doctors and a review procedure whereby claims are examined by experts and settlement is attempted if the claim seems meritorious. However, they are faced with the fact that this is becoming a rather threatening situation, expense-wise. If the bill were passed, reserves that must now be maintained for 7 years could be cut to 5 years, with a resulting savings in cost. He distributed copies of a graph showing cost of malpractice insurance premiums for various groups of physicians." *Ibid.*

The bill passed the Senate. On the House side, concern was expressed about cases involving misrepresentation by a physician. By May 14, 1971, amendments had been offered to reduce the outer limit on discovery claims from seven years to five years, in the absence of misrepresentation. The minutes of the House Committee on the Judiciary, May 14, 1971, contain this entry:

"Dr. Seacat advised the committee that the bill would reduce the statute of limitations in medical malpractice from 7 to 5 years. The bill is supported by the Oregon Medical Association. The present 7 year statute results in unnecessarily extended hospital stays, excessive use of x-rays and other increased medical costs. Many cases now filed in the sixth or seventh year would simply be moved up and filed within 5 years if the time limitation is reduced. The doctors now have a new malpractice program and will be exercising a good deal more disciplinary action against members who have malpractice claims against them. The language relating to fraud in paragraph 1 of the bill could be restated in section 4(b) to meet objections that the physician could conceal a possible malpractice claim until the statute has run." Minutes, House Committee on Judiciary 1 (May 14, 1971).

The measure passed. ORS 12.110(4) then read:

"An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered; provided that such action shall be commenced within five years from the date of the treatment, omission or operation upon which the action is based or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered." Or Laws 1971, ch 473, § 1.[5]

---

[5] The legislative history makes clear that the legislature aimed to *create* a five-year outer limit on discovery claims not involving "fraud, deceit or misleading representation" and a seven-year outer limit on discovery claims involving "fraud, deceit or misleading representation." This court so described the legislative history in *Duncan v. Augter*, 286 Or 723, 728-29, 596 P2d 555 (1979).

The literal wording of the statute, after the 1971 amendment, may, in fact, have created a 10-year outer limit on some discovery claims. The last clause of the second sentence of ORS 12.110(4) states:

"or, if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

Under that clause, if injury is not discovered until day one of year eight, a plaintiff might have two years within which to bring an action. ORS 12.115. That case, however, is not before the court.

What the legislature aimed to say was that, in cases involving fraud, deceit, or misleading representation, the injured person had up to a total of seven years from

Concerning the 1967, 1969, and 1971 legislative history, the majority concludes:

> "In light of the text and context of ORS 12.110(4) and the legislative history of that provision, we hold that the legislature intended the word 'injury,' as used in ORS 12.110(4), to mean legally cognizable harm. In the tort context of ORS 12.110(4), a harm is legally cognizable if it is the result of tortious conduct. Therefore, 'injury' as used in ORS 12.110(4) consists of three elements: (1) harm; (2) causation; and (3) tortious conduct." 318 Or at 255 (footnote omitted).

If there is one thing that is clear from the legislative history of ORS 12.110(4), it is that *the majority's conclusion, as to the meaning of injury, was not the legislative intent*. At every step of the process, in each of three consecutive legislative sessions in which this statute was considered and changed, the goal of the legislature was to enact time limits that *limit* recoverability, not to *extend* recoverability to allow an injured person time to acquire knowledge of *tortious* conduct before the statute of limitations begins to run. There is not a breath, wisp, hint, vapor, or glimmer of any legislative intent to adopt the rule that the majority purports to derive from the legislative history. The legislative intent is entirely to the contrary.

The majority misreads both the statute and our case law. I return to *Berry v. Branner, supra,* the case in which a surgeon performed a hysterectomy and left a surgical needle in the plaintiff's abdomen. Pain and discomfort preceded the discovery of the needle. The plaintiff filed her action within two years of the discovery of the needle but more than two years after the surgery. The court held that the claim accrued at the time that the plaintiff "obtained knowledge of the tort

---

the date of the treatment or operation to file, rather than the five years that otherwise would apply. What the legislature said was that if, because of fraud, deceit, or misleading representation, no action was filed within five years, the injured person has two years from the discovery to file. Literally, that could extend the statute of limitations to ten years, a result not intended by the legislature.

The paradox is that the "fraud, deceit, or misleading representation" clause appears to kick in only if no action is filed in the first five years, a result that the legislature likely did not intend. Notwithstanding the literal import of the last clause of ORS 12.110(4), it seems to me, based on the legislative history, that the last clause is aimed at all claims for "fraud, deceit or misleading representation," not just to such claims in which no action is filed for five years. Thus, if the fraud is discovered on January 2 of year three, the patient would have until January 2 of year five to file. The legislative history makes it clear that a seven-year outer limit was intended. But that case is not before us, either.

committed upon her person by defendant." 245 Or at 316. The issue before us in this case was not even raised in *Berry*. I read *Berry* to hold simply that the claim accrued when the plaintiff obtained knowledge of the injury to the person — the needle left in her abdomen during surgery — and the cause thereof — the surgery. As stated, the 1967 Legislative Assembly enacted the predecessor of current ORS 12.110(4) to limit the *Berry* holding. Or Laws 1967, ch 406, § 1.

*Dowers Farms v. Lake County*, 288 Or 669, 607 P2d 1361 (1980), involved a claim by a farmer against a county for negligently spraying herbicide on the plaintiff's land, destroying the plaintiff's crops. The issue was "whether the two year period of limitations, ORS 30.275(3), runs from the date of the incident precipitating plaintiff's injury or from the date when the plaintiff discovers the injury." 288 Or at 671 (footnote omitted). The court held that ORS 30.275(3), the tort claims statute of limitations, which required filing "within two years after the date of such accident or occurrence," runs from the date that the "plaintiff discovered that the young potato plants were deformed." *Id.* at 681. The court did not hold that the statute of limitations begins to run only when the plaintiff knew or should have known that the deformed potato plants resulted from the defendant's *tortious* conduct.

*Schiele v. Hobart Corporation*, 284 Or 483, 587 P2d 1010 (1978), involved an occupational disease claim by a meat wrapper who suffered nausea, dizziness, choking, coughing, and loss of breath. She sought treatment from a doctor, who told her that her problems likely were due to fumes from polyvinyl chloride wrapping film used to wrap meat. There was evidence that the plaintiff, before seeing the doctor, believed that the machine might be the cause. She brought an action against the manufacturer of the machine. The issue was whether the statute of limitations began to run when the plaintiff was informed by her physician of the causal link between the wrapping machine and her symptoms or when she "first became aware of her symptoms and their cause." 284 Or at 487. The court held:

> "Plaintiff argues that the statute of limitations did not begin to run until her physician diagnosed her disease and identified its source. We agree that the acquisition of such information from

a physician would undoubtedly start the period running. However, we reject plaintiff's contention that nothing short of a positive diagnosis by a physician will have this effect. A plaintiff whose condition has not yet been diagnosed by a physician can have or, in the exercise of reasonable care, could have access to information which requires or would require a reasonable person to conclude she is being seriously or permanently injured.

"On the other hand, we reject defendants' claim that knowledge of symptoms and their causal relationship to defendants' actions in and of itself initiates the running of the statute. We do not believe the legislature intended that the statute be applied in a manner which would require one to file an action for temporary sickness or discomfort or risk the loss of a right of action for permanent injury.

"The statute of limitations begins to run when a reasonably prudent person associates his symptoms with a serious or permanent condition and at the same time perceives the role which the defendant has played in inducing that condition. Of course, one's condition may deteriorate to the point where a delay in seeking medical attention is no longer reasonable and to further such delay would be to charge the individual with any knowledge which a medical examination would otherwise have disclosed." *Id.* at 489-90.

*Schiele* does not stand for the proposition that the statute of limitations does not begin to run until the plaintiff knows or should know that the defendant's conduct was tortious. It stands only for the proposition that the statute begins to run when the plaintiff is aware of the causal relationship between the defendant's conduct and the harm sustained.

*Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 742 P2d 1176 (1987), was a claim for negligent misrepresentation involving property damage. The plaintiff was a farmer who asserted that the defendant negligently told him that he would receive water by a certain date. Relying on that representation, the plaintiff planted crops, crops that eventually were damaged because irrigation water was not available by the date represented. As did *Dowers Farms v. Lake County, supra*, the case turned on ORS 30.275(3), which required that the action be brought within two years "after the date of such accident or occurrence."

The *Duyck* court held that the statute of limitations began to run when the plaintiff was aware of injury due to his reliance on defendant's representations, *not* when the plaintiff "knew that the defendant's representations regarding the availability of water were 'misrepresentations.'" 304 Or at 162-63. The court stated:

> "*Accrual of a negligence claim does not await awareness of negligence.* Accrual occurs with knowledge of the facts giving rise to the claim." *Id.* at 164 (emphasis added).

All of the above cases were decided under either the general tort statute of limitations ("injury to the person * * * shall be commenced within two years"), ORS 12.110(1), or the tort claims statute of limitations ("shall be commenced within two years after the alleged loss or injury"), ORS 30.275. I perceive no real difference between the requirements of those statutes and the statute before us, ORS 12.110(4). An action must be filed within two years after knowledge of harm and the cause of the harm, whether the harm be a needle in the abdomen, deformed plants, respiratory difficulties caused by meat-wrapping film, or unanticipated paralysis that the patient knows was caused by surgery. The injured person does not have two years from knowledge of tortious conduct.[6]

In construing ORS 12.110(1) and its predecessors, this court has never held that the statute of limitations begins to run only when (quoting the majority)

> "the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable persons aware of a substantial possibility that * * * tortious conduct * * * exists." 318 Or at 256.

On the contrary, in construing ORS 12.110(1), the court consistently has held that the statute of limitations begins to run with knowledge of only two elements, harm and a causal relationship between the harm and the defendant's conduct.

---

[6] The majority apparently concedes that, generally, "injury," as used in Oregon's other limitation statutes, requires knowledge of only "harm, identity of the tortfeasor, and causation." 318 Or at 252. There is no basis for the majority's conclusion that the "text and the context of ORS 12.110(4) and the legislative history of that provision [requires knowledge of tortious conduct]," 318 Or at 255, before the statute of limitations begins to run.

Nothing in the text or context of ORS 12.110(4) suggests that the legislature, in enacting ORS 12.110(4), intended the far-reaching change posited by the majority, to require knowledge of *fault* before the statute of limitations begins to run. The contrary conclusion seems more likely: "Injury," as used in ORS 12.110(4), means the same as "injury" as used in ORS 30.275 and ORS 12.110(1).

The same analysis should apply to an injury to the person arising from surgery. To read in the limitation period (which relates only to the diligence of the plaintiff) the element of the defendant's *fault* — as distinct from the defendant's *act* — makes ultimate liability the arbiter of timeliness. It also changes fundamentally Oregon statute of limitations law, which heretofore has focused on knowledge of *facts* (harm and causation), not on possible/probable belief of *recoverability based on those facts*.

I would apply ORS 12.110(4) as follows. Under ORS 12.110(4), a person "discover[s] or in the exercise of reasonable care should * * * discover[]" "the injury" to his or her person when the person knows, or should know, that he or she has suffered unanticipated harm caused by surgery. Those factors are what make the injury to the person on which the action is based *discovered or reasonably discoverable* in the first place. Those factors are also consistent with the statement in *Schiele v. Hobart Corporation, supra*, 284 Or at 490, that "temporary sickness or discomfort" does not actuate the statute of limitations.

On summary judgment, we view the facts in the light most favorable to the nonmoving party. *Stephens v. Bohlman*, 314 Or 344, 838 P2d 600 (1992). Before plaintiff's operation, he was a partial quadriplegic who had the use of only one limb, an arm. Plaintiff's "arm was everything to him." He used his arm to feed himself, brush his teeth, and to control an electric wheelchair through the use of a joy stick. Plaintiff also held a job where he used his arm to answer the phone and type.

Plaintiff was admitted to the hospital on January 26, 1987, for spasms in his lower extremities. Doctors recommended that plaintiff undergo a chemical rhizotomy procedure to alleviate his discomfort. This procedure, which

involved the injection of a glycerin, phenol, and amipaque solution into plaintiff's spine, would deaden the nerves of the spastic muscles and end the spasms. Before his surgery, plaintiff was not warned of any possibility that he might lose the use of his arm for any period of time. Doctors performed the surgery on plaintiff on March 13, 1987.

Within 10 to 20 minutes of plaintiff's return to his room after the surgery, plaintiff realized he could not move his arm. Plaintiff immediately complained that he could not move his arm. At that time, Dr. Parsons told one of plaintiff's parents that plaintiff would have the use of his arm back by morning. Use of plaintiff's arm did not return the next morning.

Plaintiff was discharged from the hospital on March 20, 1987, and at that time scheduled an appointment with Dr. Parsons for April 16, 1987. At the time of discharge, use of plaintiff's arm had not returned.

On April 16, one of plaintiff's parents "several" times pointed out to Dr. Parsons that the use of plaintiff's arm had not returned and that, because of this, plaintiff could not run his wheelchair and was totally dependent on the family for his needs. At that time, Dr. Parsons told plaintiff that "it would be six months to two years before [he] would have function in [his] arm again" because of the "phenol injection." Use of plaintiff's arm did not return within that period and has not returned to date. Plaintiff contacted a lawyer on August 23, 1989, and commenced this suit on November 14, 1990.

There is no real dispute about the facts here. Plaintiff was aware of substantial harm arising from the surgery on the day of the surgery. Beyond any doubt, he knew, soon after the surgery, that his "injury" was caused by the surgery. One of the defendants told him so. I concede that plaintiff was unaware that defendants' *negligence* was a cause of his harm. But plaintiff did know that the harm resulted from the *surgery*. Within the meaning of ORS 12.110(4), the injury to his person was "discovered."

Had plaintiff chosen to do so, he could have brought his action shortly after the surgery. In more than a technical sense, all of the events necessary to assert a claim, all of the

facts that would support recovery, had occurred. *Duyck v. Tualatin Valley Irrigation Dist., supra,* states that the statute of limitations begins to run when the party owning a claim "has a right to sue on it." 304 Or at 161.

The majority in part relies on Dr. Parsons' assurances given to plaintiff that the use of the arm would return in six months to two years. Reliance on such assurances to determine when the statute of limitations begins to run is irrelevant.[7]

First, as already stated, all events necessary to support assertion of a claim already had occurred. Second, the result of the majority's analysis suggests that the determination of when a statute of limitations begins to run turns, not on whether a claim exists nor on whether harm has occurred, but on whether the injury is permanent. If defendants were negligent as alleged, and injury has occurred, permanency is not relevant in deciding when the statute of limitations begins to run, because plaintiff was entitled to recover damages for the injury whether the injury be temporary or permanent, great or small. The fact that defendants gave assurances to plaintiff is irrelevant in determining when the statute of limitations begins to run (in the absence of fraud, deceit, or misleading representation, which is not alleged here).

The point is made clearer if one assumes that defendants had advised plaintiff, on the day following surgery, that "such a side effect occurs now and then; it was caused by the surgery and it is permanent." The statute of limitations would then begin to run, even if plaintiff remained unaware of defendants' *fault* in the matter. The reason: The "injury" occurred, and plaintiff was aware of the "injury."

Our cases stand for the proposition that one has knowledge of "injury" and the statute of limitations begins to run when one has knowledge, actual or constructive, of *harm,*

---

[7] Reliance on such assurances conceivably would be relevant if plaintiff claimed that he delayed bringing this case relying on Dr. Parsons' misleading representations. Plaintiff expressly disclaims reliance on the second sentence of ORS 12.110(4), which extends the statute of limitations to five years "if there has been no action commenced within five years because of fraud, deceit or misleading representation, then within two years from the date such fraud, deceit or misleading representation is discovered or in the exercise of reasonable care should have been discovered."

not when one has knowledge, actual or constructive, of a defendant's *fault*. Plaintiff's harm was legally cognizable the day that he knew of the relationship between his injury (the loss of use of the arm) and the surgery, and an action could have been filed then. Plaintiff's lack of knowledge of defendants' culpability is irrelevant in determining when the statute of limitations begins to run.

I concede that language in *Schiele* gives some support to the majority. But if the *facts* in *Schiele* are considered, there is no inconsistency. *Schiele* really stands for the proposition that the statute of limitations in an *occupational disease* claim does not begin to run until the injured person has knowledge, actual or constructive, of the relationship between the event — the use of the meat-wrapping machine, in Ms. Schiele's case — and the harm. Here plaintiff had such knowledge. The event was the surgery. The harm was the lost use of his arm.

*Berry v. Branner, supra*, and *Schiele v. Hobart Corporation, supra*, are consistent with this result. Indeed, all of our precedents are. The *Berry* statute of limitations began to run when Ms. Berry became aware of the fact that her prior discomfort was caused by *the needle*. The required cause-effect relationship was harm caused by an event. The "event" was the surgery. Ms. Berry, even after she knew that the presence of the needle caused her discomfort, probably did not know whether her problems were caused by a doctor's neglect or a nurse's neglect. But the statute began to run when she knew that the needle was present.

Similarly, the statute of limitations began to run on Ms. Schiele's claim, not when she knew that Hobart Corporation somehow was at fault, but when she knew that its meat-wrapping film was the likely cause of her discomfort. Here, again, the statute of limitations began to run, even though Ms. Schiele may have been unaware of any fault on the part of Hobart Corporation or any other entity connected with the manufacture, distribution, or sale of the meat-wrapping machine or the packaging film.

In enacting ORS 12.110(4), the legislature undoubtedly intended that the statute of limitations not run until injured persons knew that they were harmed and that the

event — such as surgery — caused the harm. It is equally clear that the legislature did not aim to create a statute of limitations that begins to run only with knowledge of fault.

In the present case, the statute of limitations began to run on plaintiff's claim when he knew of the relationship between the surgery and his injured arm. Within the meaning of ORS 12.110(4), he had discovered the "injury" to his person. He did not know the exact extent of the damage, and he may not have known whether the injury was due to the neglect of one of the defendants, the hospital, the anesthesiologist, a nurse, or other hospital employee. He had two years within which to act. Contrary to the majority, however, the statute is not suspended during the time that a plaintiff investigates to determine the exact extent of the injury and to determine which of two or more possible defendants is the person legally responsible for his or her condition. I would affirm the trial court.

Graber, J., joins in this dissent.