Argued and submitted September 27; reversed and remanded as to plaintiffs' negligence claim, otherwise affirmed December 29, 2021

John M. MARSHALL
and Karen M. Marshall, individuals;
Patsy L. Marshall, an individual;
Patsy L. Marshall, as Personal Representative of
the Estate of Richard L. Marshall, Deceased;
and Marshall Associated, LLC,
an Oregon limited liability corporation,
*Plaintiffs-Appellants,*

*v.*

PRICEWATERHOUSECOOPERS, LLP,
a limited liability partnership,
*Defendant-Respondent,*

*and*

SCHWABE, WILLIAMSON & WYATT, P.C.,
an Oregon professional corporation,
*Defendant.*

Multnomah County Circuit Court
17CV11907; A172477

504 P3d 1236

Plaintiffs filed suit against their former accountants at Pricewaterhouse-Coopers, LLP (PwC), claiming negligence and breach of contract relating to professional advice that advisor provided regarding a stock-sale transaction. PwC moved to dismiss plaintiffs' claims, contending that they were barred by issue preclusion. The trial court granted that motion, and plaintiffs first assign error to that ruling. With the court's permission, plaintiffs amended their complaint to replead allegations of negligence against PwC that were consistent with the court's issue-preclusion ruling. However, PwC moved for summary judgment against the amended complaint, and the court granted that motion on the grounds that the repleaded negligence claim was time barred by the statute of limitations in ORS 12.110(1). Plaintiffs' second assignment of error asserts that the court's grant of summary judgment was erroneous. *Held*: The trial court did not err in granting PwC's motion to dismiss plaintiffs' second amended complaint and claims therein, because plaintiffs' claims were barred by issue preclusion. However, the trial court erred in granting PwC's motion for summary judgment on plaintiffs' fourth amended complaint and repleaded negligence claim, because a genuine issue of material fact as to when plaintiffs should have reasonably discovered their negligence claim precluded judgment as a matter of law.

Reversed and remanded as to plaintiffs' negligence claim; otherwise affirmed.

Jerry B. Hodson, Judge.

Scott F. Hessell, Illinois, argued the cause for appellants. On the opening brief were John J. Dunbar and Dunbar Law LLC. Also on the reply brief were Sperling & Slater, P.C., John J. Dunbar, and Dunbar Law LLC.

Jameson R. Jones, Colorado, argued the cause for respondent. Also on the brief were Milo Petranovich, Thomas W. Sondag, Peter D. Hawkes, Lane Powell PC, Christopher D. Landgraff, Illinois, and Bartlit Beck LLP.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Reversed and remanded as to plaintiffs' negligence claim; otherwise affirmed.

**SHORR, J.**

Plaintiffs, the former shareholders of Marshall Associated Contractor, Inc. (MAC), alleged claims against their former accountants at PricewaterhouseCoopers, LLP (PwC) and former attorneys at Schwabe Williamson & Wyatt P.C. (Schwabe) relating to professional advice those advisors provided regarding a stock-sale transaction.[1] The trial court dismissed plaintiffs' claims against Schwabe on Schwabe's motion to dismiss. Plaintiffs appealed from that decision, and we reversed in part in *Marshall v. PricewaterhouseCoopers, LLP*, 316 Or App 416, 505 P3d 40 (2021). We now address plaintiffs' claims against PwC, which are the subject of this separate appeal.

In the trial court, PwC moved to dismiss plaintiffs' negligence and breach of contract claims, contending, among other things, that the claims were barred by issue preclusion. The trial court granted that motion, and plaintiffs first assign error to that ruling. With the court's permission, plaintiffs amended their complaint to replead allegations of negligence against PwC that were consistent with the court's issue preclusion ruling. However, PwC moved for summary judgment against the amended complaint, and the court granted that motion on the grounds that the repleaded negligence claim was time-barred by the statute of limitations in ORS 12.110(1). Plaintiffs' second assignment of error asserts that the court's grant of summary judgment was erroneous. Although we find no error in the court's application of issue preclusion, the court's later grant of summary judgment was erroneous, because plaintiffs raised a genuine issue of material fact as to when a reasonable person should have discovered that PwC's alleged negligence had caused them damages. As a result, we reverse in part and remand for further proceedings.

---

[1] Plaintiffs' original complaint caption referred to a plaintiff entity called Marshall Associated, LLC, "an Oregon limited liability corporation," and that description remained throughout the litigation and into this appeal. We note, however, that an Oregon LLC is, in fact, a "limited liability company." *See* ORS chapter 63.

## I.   FIRST ASSIGNMENT OF ERROR:
## ISSUE PRECLUSION

We begin by considering plaintiffs' first assignment of error, in which they contend that the trial court erred by granting PwC's motion to dismiss their negligence and breach of contract claims on issue preclusion grounds. We first relay the facts relevant to that ruling, and analyze that issue, before considering plaintiffs' second assignment of error.

### A.   *The Relevant Facts Giving Rise to This Litigation*

In reviewing a trial court's grant of a motion to dismiss, we assume the truth of all well-pleaded allegations in the operative complaint and give plaintiffs the benefit of all favorable inferences that may fairly be drawn from their allegations. *Kelly v. Lessner*, 224 Or App 31, 33, 197 P3d 52 (2008).

The facts relevant to this litigation began in 2002 when plaintiffs' heavy construction company MAC was awarded approximately $40 million in a litigation award. Interested in minimizing the tax consequences of that award, plaintiffs began negotiating with a company called Fortrend that proposed to purchase all of MAC's stock and assume all of its liabilities, including the expected federal and state taxes associated with the $40 million award.[2] Plaintiffs' complaint explains:

> "Fortrend claimed, among other things, that MAC's remaining assets would facilitate Fortrend's 'debt-collection' business, and that Fortrend would employ MAC's tax liabilities to legitimately offset tax deductions associated with its debt-collection business. As a result, Fortrend said, Plaintiffs would realize a greater net return on its investment in MAC than would otherwise be the case if MAC simply distributed its assets to the shareholders."

---

[2] Ultimately, plaintiffs assert that MAC's stock was purchased by Essex Solutions Inc., an entity jointly owned by Fortrend and another company, Midcoast. Plaintiffs' advisors negotiated with representatives of Fortrend, Essex, and Midcoast during the period in which the transaction was evaluated and consummated. For simplicity's sake, we refer to the buyer in this transaction as Fortrend, because the distinct roles played by those three involved entities are not important to our analysis.

Plaintiffs engaged their usual attorneys, Schwabe, in spearheading an evaluation of the proposed deal. Plaintiffs' long-time accountants at PwC also participated in that evaluation. Specifically, plaintiffs engaged Schwabe and PwC to examine all legal and tax implications of the proposed transaction, advise plaintiffs on whether the transaction complied with applicable laws, and advise plaintiffs as to whether the transaction created a risk of greater tax liabilities beyond what would be expected from a simple stock sale. Schwabe and PwC also communicated and negotiated with Fortrend on plaintiffs' behalf and were tasked with handling all aspects of consummating the deal, if approved. Plaintiffs assert that they "wanted to avoid any potential controversy or litigation," advised Schwabe and PwC of that position, and would not have entered the transaction had they been advised or believed that the transaction did not comply with the law.

Schwabe and PwC proceeded to investigate the proposed transaction. Plaintiffs assert that PwC learned that "Fortrend would borrow a substantial sum" to finance the transaction and "intended to employ MAC's tax liability to offset gains and deductions associated with high basis/low value assets." Plaintiffs also assert that PwC was aware that plaintiffs were "relying on Fortrend to satisfy MAC's tax obligations." Plaintiffs essentially contend that those facts either should have or did raise red flags for PwC regarding the tax consequences of the proposed transaction, but that PwC did not communicate any concerns to plaintiffs. Ultimately, plaintiffs claim that PwC advised them "that the proposed transaction was legitimate for tax purposes, and that [plaintiffs] would have no ongoing exposure once the transaction with Fortrend was completed." Plaintiffs assert that PwC and Schwabe "both recommended that [plaintiffs] go forward with the proposed transaction."

In January 2003, plaintiffs decided to go through with the Fortrend transaction. Schwabe and PwC handled all aspects of negotiating and consummating the transaction. Plaintiffs assert that, in the weeks before closing, PwC became concerned about the tax implications of the transaction but did not share those concerns with plaintiffs or Schwabe or investigate further.

Following the close of the transaction in March 2003, plaintiffs contend that both advisors continued to bill for work related to the transaction, its tax and accounting implications, and communications with the IRS. Plaintiffs allege that, during that period, PwC never counseled plaintiffs that they were at risk for additional tax liability or corrected any of its past advice. Plaintiffs contend that PwC did advise them, post-closing and for the first time, that they "had to submit a 'protective disclosure' with their tax returns, which according to PwC would protect plaintiffs from potential penalty exposure."

Plaintiffs assert that they later discovered that the Fortrend transaction was an "improper tax-avoidance" mechanism known as a "Midco" transaction. *See Salus Mundi Foundation v. C.I.R.*, 776 F3d 1010, 1013 (9th Cir 2014) (explaining the mechanics of a "Midco" transaction tax-avoidance scheme). Since the IRS's issuance of Notice 2001-16 in 2001, certain Midco transactions have been considered "listed transactions" subject to IRS challenge and penalties. Intermediary Transactions Tax Shelter, Notice 2001-16, 2001-1 CB 730 (2001). Plaintiffs contend that PwC never advised them of Notice 2001-16 or the IRS's position on similar transactions.

As a result of the Fortrend transaction, plaintiffs were subject to an IRS investigation. After determining that plaintiffs' former company had a substantial unpaid tax liability and no assets from which to collect, the IRS concluded in August 2011 that plaintiffs were liable as transferees for over $20 million in back taxes, penalties, and interest. In June 2016, the United States Tax Court ruled in favor of the government's determination and against plaintiffs. *Estate of Marshall v. C.I.R.*, 111 TCM (CCH) 1579, 2016 WL 3460226 (2016), *aff'd sub nom Marshall v. C.I.R.*, 782 F Appx 565 (9th Cir 2019), *cert den*, ___ US ___, 140 S Ct 1270 (2020).

B.   *The 2016 United States Tax Court Decision*

We briefly summarize the 2016 tax court decision, which is relevant to our consideration of plaintiffs' arguments on appeal. In *Estate of Marshall*, the tax court was tasked with determining whether plaintiffs were liable as

transferees for MAC's unpaid federal income tax liability, plus accompanying penalties and interest. 2016 WL 3460226 at *1. That determination required the court to consider whether the various separate transfers that made up the Fortrend transaction should be "collapsed." *Id*. at *11-12. The court applied the legal standard used in "jurisdictions with fraudulent transfer provisions similar to Oregon's" and asked whether plaintiffs "had constructive knowledge that the debtor's debts would not be paid." *Id*. at *11. The court explained the standard:

> "Finding that a person had constructive knowledge does not require finding that he had actual knowledge of the plan's minute details. It is sufficient if, under the totality of the surrounding circumstances, he 'should have known' about the tax-avoidance scheme. *HBE Leasing Corp. v. Frank*, 48 F3d 623, 636 (2d Cir 1995).
>
> "Constructive knowledge also includes 'inquiry knowledge.' Constructive knowledge may be found where the initial transferee became aware of circumstances that should have led to further inquiry into the circumstances of the transaction, but no inquiry was made. *Id*. Some cases define constructive knowledge as the knowledge that ordinary diligence would have elicited, while others require more active avoidance of the truth. [*Diebold Foundation, Inc. v. C.I.R.*, 736 F3d 172, 187 (2d Cir 2013)]."

*Id*. at *12.

The tax court concluded that plaintiffs had "constructive knowledge" of the scheme regardless of which definition of "constructive knowledge" was applied. *Id*. The court first explained that its analysis focused "on what [plaintiff John Marshall] knew," due to his assumed role as representative for the remaining plaintiffs in communications regarding the transaction, as well as "what [plaintiffs] were advised and what they themselves appreciated." *Id*. The court then determined that plaintiffs, Schwabe, and PwC "had constructive knowledge of the entire scheme." *Id*.

The court noted certain findings as relevant to its constructive knowledge analysis. First, the court found that John Marshall, as representative for the remaining plaintiffs in evaluating the transaction, understood its basic

structure—specifically, that he "knew that [Fortrend] was interested in buying MAC only for its tax liability; that [Fortrend] intended to use high-basis low-value assets to offset MAC's income; that [Fortrend] intended to obtain a refund of MAC's prepaid taxes, a plan he was leery about; and that [Fortrend] was splitting MAC's avoided taxes with [plaintiffs]." *Id.* The court also found that, before the transaction closed, "each of the Marshalls was warned by Schwabe of the risks of transferee liability," and John Marshall specifically "was warned by PwC that the stock sale was similar to a listed transaction and was advised by PwC not to engage in the stock sale." *Id.* Although the court noted that John Marshall "dispute[d] what PwC actually told him," it concluded that "it was clear from the record that PwC and John discussed" that the "proposed stock sale was similar to a listed transaction." *Id.* at *12 & n 6. Additionally, the court found that plaintiffs knew that their earlier litigation award would be considered income and would be subject to income tax liability. *Id.* at *12. "This knowledge motivated [plaintiffs] to enter into a transaction to mitigate this tax liability." *Id.* Lastly, the court found that plaintiffs had received promotional materials from Fortrend that referenced IRS Notice 2001-16. *Id.* "Given this reference [in the promotional materials] and especially PwC's warning to John [Marshall that the proposed stock sale was similar to a listed transaction], the Marshalls and their Schwabe advisers were or should have been on heightened alert for other red flags." *Id.*

Finally, the tax court cited the legal standard applied in *Diebold Foundation, Inc.*, stating that, "if the advisers knew or should have known[,] then the transferee is deemed to have had the same knowledge and had a duty to inquire." *Id.* at *13 (citing 736 F3d at 188-90). The court explained that John Marshall, PwC, and Schwabe were "analogous to the advisers" in *Diebold Foundation, Inc.* and that the remaining Marshall plaintiffs Richard, Patsy, and Karen were "akin to the shareholders in that case." *Id.* The court concluded that plaintiffs "had a duty to inquire, and they were advised that there was a significant risk of transferee liability." *Id.* Plaintiffs were thus found liable as transferees. *Id.*

C.  *Procedural History of the Current Litigation*

The following year, in March 2017, plaintiffs filed suit against Schwabe and PwC, alleging various claims including negligence and breach of contract. As relevant to this appeal, plaintiffs alleged that PwC breached its professional duties to plaintiffs in a variety of ways. They alleged that PwC failed to adequately advise them of the transferee liability risks associated with the transaction, failed to advise them regarding the firm's prior dealings with Fortrend, failed to adequately advise them about IRS Notice 2001-16 and the likelihood that the Fortrend transaction would be deemed a "listed transaction," failed to adequately explain the tax liability risks associated with listed transactions, failed to adequately investigate Fortrend, failed to implement the transaction in a fashion that could have avoided transferee liability, failed to advise plaintiffs before closing that plaintiffs would have to file a "protective disclosure" to the IRS, failed to adequately monitor the transaction after the stock sale, failed to adequately advise plaintiffs about how to unwind or withdraw from the transaction, and failed to take "adequate remedial action to eliminate or mitigate" plaintiffs' transferee liability. Plaintiffs contended that they would not have entered into the transaction or suffered transferee tax liability and other damages such as attorney fees but for PwC's negligence.

In plaintiffs' breach of contract claim, they asserted that PwC breached several specific assurances and promises to plaintiffs: that plaintiffs' tax returns would comply with applicable law; that plaintiffs could enter into the transaction without risk of significant additional tax liability; and that the transaction "posed little or no risk of any large or continuing tax liability." Plaintiffs asserted that they reasonably relied on those promises in entering into the transaction.

PwC moved to dismiss plaintiffs' claims, contending, among other arguments, that the claims were barred by issue preclusion. PwC pointed to the 2016 tax court opinion that found that PwC had advised plaintiffs not to engage in the transaction and determined that plaintiffs had constructive knowledge that the transaction was a tax-avoidance

scheme. Plaintiffs opposed the motion, contending that the tax court findings did not resolve the questions underlying either claim.

Following a hearing, the trial court granted PwC's motion to dismiss plaintiffs' claims on issue preclusion grounds. The court explained:

> "I've read the tax court's opinion and it's clear to me that they found and it was critical to their holding in the case that [plaintiffs] were warned by PwC that the stock sale was similar to a listed transaction and advised [by] PwC not to engage in the stock sale. I just don't see, given that finding and the fact that I find that it is binding on the parties, that—that the plaintiffs in this case can go forward with their claim against PwC which is premised on PwC not warning them about that risk.

> "In fact, not only did they warn them, but they told them not to do the transaction. And so from my perspective, they're—they cannot assert the essential elements of either a negligence or breach-of-contract claim to the extent that they're any different in a malpractice situation."

Plaintiffs' claims were dismissed with prejudice.[3]

### D.  *Analysis*

We now consider the merits of plaintiffs' first assignment of error, which contends that the trial court erred in granting PwC's motion to dismiss their claims on issue preclusion grounds. We review that ruling for legal error. *City of Portland v. Huffman*, 264 Or App 312, 315, 331 P3d 1105 (2014).

"Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993).[4]

---

[3] Plaintiffs were subsequently granted leave to amend their complaint to replead a negligence claim against PwC that did not conflict with the court's issue preclusion ruling. That repleaded negligence claim is the subject of plaintiffs' second assignment of error, which we address further below.

[4] "The general rule is that the preclusive effect to be given to a judgment is determined by the law of the jurisdiction in which the judgment was rendered," and for that reason, "state courts generally are bound by federal law

"If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:

"1.    The issue in the two proceedings is identical.

"2.    The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3.    The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4.    The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5.    The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Id*. at 104 (internal citations omitted). "Even where [the five *Nelson*] elements are met, the court must also consider the fairness under all the circumstances of precluding a party." *Minihan v. Stiglich*, 258 Or App 839, 855, 311 P3d 922 (2013) (internal quotation marks omitted).

       Plaintiffs' main argument on appeal is that the trial court's application of issue preclusion was erroneous because the tax court findings regarding PwC's advice to plaintiffs were not necessary or essential to that decision. Plaintiffs contend that the tax court imputed PwC's and Schwabe's knowledge to plaintiffs; in other words, "[f]or purposes of tax liability, the Marshalls were deemed to know what their advisors knew, and any duty of the Marshalls' advisors to inquire further into the circumstances of the transaction was imputed to the Marshalls themselves." Viewing the tax court's decision in that manner, plaintiffs claim that any findings in the tax court opinion that distinguish between the knowledge of plaintiffs and the knowledge of their advisors, or that address "whether PwC conveyed its sophisticated understanding" of the transaction to plaintiffs, were unnecessary and not essential to the tax court's decision

---

in determining the preclusive effect of federal court judgments." *Aguirre v. Albertson's*, 201 Or App 31, 46, 117 P3d 1012 (2005). However, there are "few or no differences" between federal and Oregon preclusion principles. *Id.* Our past cases have applied both Oregon and federal case law in analyzing whether preclusion arises from a prior federal judgment. *See id.*; *Durham v. City of Portland*, 181 Or App 409, 424-26, 45 P3d 998 (2002).

on the merits. Plaintiffs also argue that the application of issue preclusion here is unfair. They contend that the tax court proceedings did not afford them full discovery from PwC. They also cite documents that they contend contradict the testimony of PwC representatives in the tax court and undermine confidence in the tax court's determination.

In response, PwC argues that the tax court did not simply impute PwC's knowledge to plaintiffs, and instead "based its constructive-knowledge findings largely on PwC's communicated advice." PwC directs us to plaintiffs' briefing in the tax court, which pressed the court to apply a "subjective test" for constructive knowledge and contested that PwC had communicated any concern about the transaction. PwC contends that plaintiffs' framing of the issues made the court's findings as to what PwC advised plaintiffs essential to that decision. PwC further contends that "explicit findings supporting a judgment bind the parties going forward, even if the court might have chosen a narrower or different ground." Finally, PwC argues that plaintiffs had a full opportunity to litigate the relevant issues before the trial court and waived any fairness argument by failing to raise it in the trial court.[5]

Plaintiffs do not dispute that they actually litigated the relevant factual issues in the tax court, that they were a party to that proceeding, or that United States Tax Court proceedings are generally afforded preclusive effect, and we conclude that those requirements of issue preclusion are established. Therefore, we only address the remaining requirements for the application of issue preclusion.

First, issues of ultimate fact determined in the prior tax case are identical to issues raised in plaintiffs' breach of contract and negligence claims. The tax court found that PwC advised John Marshall "that the proposed stock sale

---

[5] We note that PwC repeats the argument, first raised in its motion to dismiss the instant appeal, that we lack jurisdiction to hear this appeal because plaintiffs "failed to properly serve PwC with their notice of appeal before the statutory deadline." We conclude that that argument is without merit, for the reasons articulated in the Appellate Commissioner's order denying PwC's motion to dismiss, signed on June 2, 2020. We agree with the Appellate Commissioner's determination that service of the notice of appeal in this case was not deficient and conclude that this court possesses jurisdiction.

was similar to a listed transaction, explained to John what a listed transaction was, and tried to discourage John from entering into the proposed stock sale." *Estate of Marshall*, 2016 WL 3460226 at \*5. Plaintiffs' complaint, on the other hand, alleges that PwC failed to adequately advise them of the transferee liability risks associated with the transaction, and alleges that plaintiffs would not have gone forward with the transaction but for that deficient advice. The relevant factual issues determined by the tax court are indeed identical to—and support a completely opposite version of events from—the factual issues raised in plaintiffs' claims against PwC.

Because we conclude that the cases raise identical issues of ultimate fact, we now address plaintiffs' argument that those issues were not essential to the tax court's decision on the merits. That argument largely relies on plaintiffs' contention that the tax court imputed Schwabe's and PwC's knowledge of the transaction's red flags to plaintiffs. We, however, reject that contention, because we do not agree that the tax court's constructive knowledge and transferee liability determinations were based merely on the imputation of knowledge from Schwabe and PwC to plaintiffs. Although the court explained that the relevant standard did "not require finding that [a taxpayer] had actual knowledge of the plan's minute details," it is nevertheless clear that the court's main inquiry was to determine what plaintiffs knew about the nature of the transaction. *Id.* at \*12. In applying a "should have known" or inquiry knowledge standard, the court framed the question before it as whether plaintiffs were "aware of circumstances that should have led to further inquiry." *Id.* The court was explicit in its focus "on what [plaintiff John Marshall] knew" and "what [plaintiffs] were advised and what they themselves appreciated." *Id.*[6]

---

[6] In arguing their interpretation of the tax court opinion, plaintiffs direct us to other federal cases that, they assert, imputed the knowledge of advisors to their clients in assessing whether those clients had constructive knowledge. *See Slone v. C.I.R.*, 896 F3d 1083, 1087 (9th Cir 2018), *cert den*, ___ US ___, 139 S Ct 1348 (2019); *Hawk v. C.I.R.*, 114 TCM (CCH) 501, 2017 WL 5151379, \*17-18 (2017), *aff'd sub nom Billy F. Hawk, Jr., Marital Trust v. C.I.R.*, 924 F3d 821 (6th Cir), *cert den*, ___ US ___, 140 S Ct 38 (2019). In plaintiffs' assessment, those cases show that, to the extent that the tax court made findings as to what plaintiffs actually

"[W]hen the face of a judgment or order in a prior proceeding demonstrates that a matter was actually determined, the determination is preclusive." *Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 636, 50 P3d 238, *rev den*, 335 Or 42 (2002); *see also Minihan*, 258 Or App at 858 n 1 (barring relitigation of a property line finding, even if "it might have been possible to render a decision" without it). The tax court findings at issue here appear on the face of the tax court's written opinion, and that explicit nature affords them a preclusive status in this case, regardless of whether or not the tax court could have reached the same ruling via a narrower path.

The federal courts, which frame the essentiality requirement as whether a finding was "necessary" to the prior decision, apply the same standard—a court does "not ask whether the resolution of an issue was necessary to reach the same outcome; rather, the inquiry is whether the issue was necessary to the decision actually rendered." *Manganella v. Evanston Ins. Co.*, 700 F3d 585, 594 (1st Cir 2012); *see also Hoult v. Hoult*, 157 F3d 29, 32 (1st Cir 1998), *cert den*, 527 US 1022 (1999) ("a finding is necessary if it was central to the route that led the factfinder to the judgment reached, even if the result could have been achieved by a different, shorter and more efficient route" (internal quotation marks omitted)); *Mothers Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F2d 1566, 1571 (Fed Cir 1983) ("[T]he requirement that a finding be 'necessary' to a judgment does not mean that the finding must be so crucial that, without it, the judgment could not stand. Rather, the purpose of the requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation."). Here, the tax court was explicit that it was determining plaintiffs' transferee liability based on its findings regarding what John Marshall and the other plaintiffs knew, understood, and appreciated about the transaction, not on the imputation of PwC's and Schwabe's knowledge to plaintiffs. PwC's advice to John Marshall was

---

knew, those findings were unnecessary. Even if plaintiffs' read of the above cases is accurate, those decisions have little relevance to whether the relevant tax court findings at issue in this case were essential to the *Estate of Marshall* decision, as we continue to explain.

therefore necessary and essential to the court's ultimate decision.[7]

Plaintiffs' arguments in the tax court further support our conclusion that the tax court's findings regarding PwC's advice to plaintiffs were essential to that court's decision, because an otherwise unessential finding might become essential "because of the way [a litigant] framed the issues." *McCall v. Dynic USA Corp.*, 138 Or App 1, 7, 906 P2d 295 (1995); *see also Mothers Restaurant, Inc.*, 723 F2d at 1571 (similarly concluding that an issue might become necessary to a decision if it is a "focus of the parties' pleadings and *** fully litigated"). Plaintiffs do not deny that they litigated their knowledge in the tax court by arguing for a subjective good faith standard and disputing that PwC had communicated any concerns about the transaction to them. Plaintiffs' framing of the issues in the tax court is further support for our view that the tax court's findings regarding PwC's communicated advice were indeed essential to its decision on the merits.

We briefly address plaintiffs' argument that the application of issue preclusion is unfair under these circumstances because plaintiffs were not afforded full discovery from PwC in the tax court and because certain documents bring aspects of the PwC representative's testimony in the tax court, and the tax court's ultimate findings, into doubt. In short, plaintiffs' arguments are unavailing. First, plaintiffs had a strong motivation to litigate their knowledge and PwC's advice to them in the tax court and did so in that forum. *Cf. Miller v. Board of Psychologist Examiners*, 289 Or App 34, 41, 407 P3d 935 (2017) (considering, as part of issue preclusion fairness inquiry, "the realities of litigation, including petitioner's incentive to vigorously litigate the factual issues" during the prior proceeding). Further,

---

[7] Plaintiffs do not raise the argument that, even if John Marshall's claims are precluded by the tax court decision due to the court's findings regarding PwC's advice to John, the remaining plaintiffs' claims are not. Although plaintiffs contend, in reply briefing, that the tax court's reliance on imputed knowledge is "indisputable" because "for three of the four Marshalls, the tax court provided no other basis for liability since they were not parties to discussions with PwC," plaintiffs do not develop an argument that we should consider the plaintiffs individually for purposes of issue preclusion. Therefore, we do not consider or discuss that issue.

the arguments plaintiffs raise in questioning the accuracy of the PwC representative's testimony and the tax court's ultimate findings are not new. Plaintiffs made the same arguments in the tax court, and those arguments were necessarily rejected by the tax court. In light of those factors, plaintiffs have not presented a compelling argument that the application of issue preclusion is unfair under these circumstances. *See State Farm v. Century Home*, 275 Or 97, 108-09, 550 P2d 1185 (1976) (explaining that unfairness requires circumstances that "severely undermine[]" confidence in the "integrity of the determination," such as where "the verdict was the result of a jury compromise," the "prior determination was manifestly erroneous," "newly discovered or crucial evidence that was not available to the litigant at the first trial * * * would have a significant effect on the outcome," or where "outstanding determinations are actually inconsistent on the matter sought to be precluded").

Finally, our determination in *Marshall v. PricewaterhouseCoopers, LLP*, 316 Or App at 439-40, that the issues of fact determined by the tax court did not preclude plaintiffs' claims against Schwabe, does not mandate the same result as to PwC. As to Schwabe, the tax court found only that Schwabe advised plaintiffs that the transaction posed a risk of transferee liability. *Estate of Marshall*, 2016 WL 3460226 at *4, 12. The precise nature of that advice or how the risk was characterized was not determined. That finding is insufficient to preclude plaintiffs' specific allegations and claims against Schwabe. As to PwC, however, the tax court found that PwC advised John Marshall "that the proposed stock sale was similar to a listed transaction, explained to John what a listed transaction was, and tried to discourage John from entering into the proposed stock sale." *Id.* at *5. Those findings are different in kind from the court's finding as to Schwabe and preclude plaintiffs' specific allegations and claims against PwC.

## II.   SECOND ASSIGNMENT OF ERROR: STATUTE OF LIMITATIONS

We now turn to plaintiffs' second assignment of error, in which they contend that the trial court erred in

ruling that their repleaded negligence claim, as amended in response to the court's issue preclusion ruling, was barred by the statute of limitations in ORS 12.110(1).

### A.   *Relevant Facts on Summary Judgment*

When reviewing a trial court's grant of summary judgment to a defendant, we view the evidence and all reasonable inferences that may be drawn from that evidence in the light most favorable to the plaintiffs. *Yeatts v. Polygon Northwest Co.*, 360 Or 170, 172, 379 P3d 445 (2016).

Following the trial court's grant of PwC's motion to dismiss plaintiffs' negligence and breach of contract claims, plaintiffs were granted the opportunity to replead in a manner consistent with the court's issue preclusion ruling. Plaintiffs subsequently filed a new amended complaint for negligence against PwC. The complaint largely alleged the same general background facts concerning the transaction itself that had formed the prior complaints, contending that PwC's negligent representation had caused them to enter into the Fortrend transaction and suffer resulting damages. However, plaintiffs' repleaded allegations focused on a narrow theory of negligence involving PwC's failure to put its advice against the transaction into writing. Even accepting the tax court's preclusive findings, plaintiffs contended, PwC was still negligent for failing to communicate its advice in writing regarding a complicated and consequential transaction. Central to that theory was the contention that plaintiffs were unsophisticated in tax matters and failed to understand any oral advice from PwC against the transaction. Plaintiffs contended that, had PwC met the standard of care for an accountant under the circumstances and put its advice against the transaction in writing, plaintiffs would have properly understood the risks and would not have entered into the transaction. As in their earlier complaints, plaintiffs claimed damages related to "[a]ttorney fees and costs *** to deal with the IRS and the Oregon Department of Revenue claims of transferee tax liability"; fees and costs paid to PwC for services associated with the transaction; and the transferee tax liability, penalties, and interest that plaintiffs suffered.

In the trial court, PwC moved for summary judgment pursuant to ORCP 47 B, arguing that the repleaded negligence claim was time-barred by the two-year statute of limitations in ORS 12.110(1).[8] Specifically, PwC argued that the two-year clock started running in December 2006, when the IRS informed plaintiffs that the government had "begun an examination of [their] potential transferee liability," and when plaintiffs began paying attorney fees for representation and defense through that investigation. PwC contended that, once those events occurred, plaintiffs had sufficient information to bring their claim, because they knew or should have known that PwC's alleged negligence in failing to put its advice in writing had caused them damages in the form of attorney fees. Based on that timeline, PwC argued that plaintiffs' claim had been time-barred since December 2008.

Plaintiffs argued that the statute of limitations did not start to run until April 2010 at the earliest, when the IRS made a preliminary determination that plaintiffs were liable for MAC's unpaid taxes.[9] Plaintiffs contended that they had no reason to know they had a negligence claim against PwC during the years from 2006 to 2009 during which the IRS was only investigating MAC's returns, and noted that the IRS had not turned its attention to plaintiffs as MAC's former owners until 2009 at the earliest. Plaintiffs also argued that they had reasonably relied on the assurances of their attorneys at Schwabe, who continued to represent them until 2010. In April 2003 following the close of the transaction, Schwabe had advised plaintiffs in writing that the transaction presented plaintiffs with a "minimal" risk of future liability in the event that Fortrend failed to pay MAC's debts. Plaintiffs contended that Schwabe never changed that advice, even following the 2006 IRS notice,

---

[8] ORS 12.110(1) states:

"An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

[9] After plaintiffs sold their stock, their company became known as First Associated Contractors, Inc. However, we continue to refer to the company as MAC throughout our opinion, for simplicity's sake.

and continued to advise them that "they did not understand why the IRS was questioning the transaction, and that the IRS's position on transferee liability was wrong and unlikely to be successful." Plaintiffs also pointed to evidence that in March 2008, Schwabe had advised them that the IRS had "probably closed its file on this matter and simply not provided us with notification." Because plaintiffs and PwC had signed a tolling agreement that tolled the statute of limitations from December 2010 until plaintiffs filed their lawsuit, plaintiffs contended that their negligence claim was timely.

After a hearing, the trial court granted PwC's motion for summary judgment by order without providing any written or oral explanation of the reasoning behind its ruling.

B. *Analysis*

Plaintiffs assign error to the trial court's ruling. On review of a grant of summary judgment, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Gaston v. Parsons*, 318 Or 247, 251, 864 P2d 1319 (1994). There is no genuine issue of material fact if, viewing the relevant facts and all reasonable inferences in the light most favorable to plaintiffs, "no objectively reasonable juror could return a verdict for" plaintiffs. ORCP 47 C.

Plaintiffs repeat their arguments made before the trial court, contending that they had no reason to believe that any negligence on the part of PwC had caused them damages until 2010 at the earliest, when the IRS made a preliminary determination that they were liable as transferees. They rely on *McCulloch v. Price Waterhouse LLP*, 157 Or App 237, 248, 971 P2d 414 (1998), *rev den*, 328 Or 365 (1999), in which PwC similarly argued that the plaintiff should have known that they had a potential claim when they first received notice that they were being investigated by the IRS. In *McCulloch*, the plaintiff argued that for a period after receiving that notice, they had reasonably relied on PwC's advice that the investigation was likely in error and would soon be rectified. *Id.* In *McCulloch*, we concluded that that factual dispute about whether the plaintiff

reasonably relied on PwC's representations was sufficient to preclude summary judgment. *Id.* at 249. Because of the assurances Schwabe gave them during the first years of the IRS investigation, plaintiffs contend, they could not have reasonably become aware that they had a possible claim until 2010, when the IRS made a preliminary determination that plaintiffs were liable as transferees.

PwC argues that plaintiffs knew or should have known the potential for their negligence claim by at least 2006, based on PwC's 2003 warnings (as found by the tax court), and the IRS's 2006 notice that prompted plaintiffs to begin accruing damages in the form of attorney fees. PwC contends:

> "The Marshalls by December 2006 thus knew or should have known four facts: (1) that PwC advised against the Fortrend deal, telling the Marshalls it was similar to a reportable tax shelter; (2) that PwC's advice was only oral and not written; (3) that (assuming the truth of their allegations) the Marshalls would have terminated the deal if PwC put its advice in writing; and (4) that a big risk PwC warned about (IRS challenge of the tax shelter) had materialized."

The limitations period governing an accounting-malpractice action is two years. ORS 12.110(1); *Godfrey v. Bick & Monte*, 77 Or App 429, 432, 713 P2d 655, *rev den*, 301 Or 165 (1986). That two-year clock starts "when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility" that they have been damaged and that defendant's negligence caused that damage. *Gaston*, 318 Or at 256; *Godfrey*, 77 Or App at 432. "[T]o trigger the running of the statute of limitations, it is not necessary that a plaintiff be aware of every potential breach of duty." *Padrick v. Lyons*, 277 Or App 455, 468, 372 P3d 528, *rev den*, 360 Or 26 (2016). "All that is required is that the plaintiff discover that some invasion of the legally protected interest at stake has occurred." *Gaston*, 318 Or at 255 n 8. Whether and when a reasonable person would be aware of a substantial possibility that they have suffered a legally cognizable harm (in other words, that the required elements of harm, causation, and tortious conduct all exist) is a question

of fact that depends upon all the relevant circumstances. *Id.* at 256.

With those standards in mind, the question before us is whether the record on summary judgment establishes as a matter of law when plaintiffs were aware or should have been aware of a substantial possibility that PwC's negligence, as alleged, had caused them harm. In considering that issue, we conclude that plaintiffs have raised a genuine issue of material fact as to when plaintiffs reasonably should have been aware of a substantial possibility that their initial damages, the attorney fees for representation during the IRS examination, were caused by PwC's purported negligence.

To summarize the evidence, in December 2006, plaintiffs received notice that the IRS was examining MAC's tax returns and that, if that examination determined that MAC had outstanding tax liability, plaintiffs could be liable as transferees. That notice also informed plaintiffs that the IRS had begun examining plaintiffs for "potential transferee liability." Throughout 2007, plaintiffs' attorney at Schwabe billed for work associated with the IRS examination on a near monthly basis, including work representing plaintiffs during IRS depositions. However, it was not until January 2009 that the IRS determined that MAC had unpaid taxes, penalties, and interest, and the IRS did not determine that plaintiffs were liable for that balance as transferees until April 2010.

Plaintiffs assert that they could not have reasonably been aware that they had a potential negligence claim against PwC when they received the December 2006 IRS Notice, or during the following years while the IRS continued investigating, because Schwabe continued to advise them "that the IRS's position on transferee liability was wrong and unlikely to be successful" and that the IRS had "probably closed its file on this matter and simply not provided us with notification." Plaintiffs essentially contend that Schwabe's advice led them to reasonably believe that the initial IRS examination did not present any cause for concern, which reasonably delayed their discovery of their negligence claim against PwC. That assertion regarding

Schwabe's advice and assurances raises a genuine issue of material fact as to when plaintiffs should have known, in the exercise of reasonable care, sufficient facts such that a reasonable person would have been aware of a substantial possibility that PwC's alleged negligence had caused them injury. Indeed, a reasonable factfinder could conclude on this record, considering Schwabe's advice, that, at least before January 2009 when the IRS had yet to even determine that plaintiffs' former company had unpaid tax liability, plaintiffs had not discovered, nor should a reasonable person have discovered, a substantial possibility that their expenses related to the IRS examination were *caused* by PwC's negligence. As in *McCulloch*, whether or not plaintiffs reasonably relied on Schwabe's advice is a question of fact that precludes judgment as a matter of law.[10]

The tax court's findings—that PwC orally advised John Marshall that the transaction was similar to a listed transaction, explained what a listed transaction was, and advised against proceeding with the transaction—do not mandate a contrary result. The crux of plaintiffs' repleaded claim is that John Marshall failed to understand or appreciate that oral advice, and that plaintiffs would not have participated in the transaction had PwC advised them in writing. We do not address plaintiffs' likelihood of successfully prosecuting that claim in light of the tax court's preclusive findings; that is irrelevant to the question before us.

---

[10] PwC argues that *McCulloch* is inapposite here because plaintiffs point to advice from Schwabe, not PwC, in contending that those assurances prevented them from discovering their claim in 2006. However, PwC fails to cite any Oregon authority that holds that a plaintiff may only rely on assurances from the tortfeasor, and not from other sources, for the protections of the discovery rule to apply. In fact, PwC's argument is contrary to *Keller v. Armstrong World Industries, Inc.*, 197 Or App 450, 464-66, 107 P3d 29, *adh'd to as modified on recons*, 200 Or App 406, 115 P3d 247 (2005), *aff'd*, 342 Or 23, 147 P3d 1154 (2006), in which we determined that a mechanic's claim against muffler manufacturers and suppliers for asbestos-related injuries could not be decided on summary judgment when the mechanic raised a genuine issue of material fact as to when he should have reasonably discovered that asbestos was the likely cause of his injuries because of evidence in the record that several doctors had, for years, advised that there was no more than a possibility that his illness was asbestos-related. We explained in that case that the fact that the doctors' advice was "not presented with the intent of hiding a tortfeasor's wrongdoing or liability" was "not important" because the inquiry was only focused on what effect that advice would have had on a reasonable person. *Id.* at 466. Thus, we reject PwC's argument on that point.

PwC only moved for summary judgment on the ground that the claim was time-barred, and in considering that solitary issue, we conclude that plaintiffs' claims are not time-barred as a matter of law, due to the factual record that plaintiffs put forward on the issue of causation. That record demonstrates that, for several years following the 2006 IRS notice, the IRS had yet to make a determination as to whether plaintiffs' company or plaintiffs themselves had any unpaid tax liability. The record also supports a finding that during that period, plaintiffs' attorneys essentially advised them that the IRS's case against them was weak and that the IRS had probably already decided against pursuing the matter further. That record is sufficient to preclude summary judgment.

## III.   CONCLUSION

In summary, we conclude that the trial court did not err in granting PwC's motion to dismiss plaintiffs' second amended complaint and claims therein, because we agree that plaintiffs' claims are barred by issue preclusion. However, the trial court did err in granting PwC's motion for summary judgment on plaintiffs' fourth amended complaint and repleaded negligence claim, because a genuine issue of material fact as to when plaintiffs should have reasonably discovered their negligence claim precludes judgment as a matter of law.

Reversed and remanded as to plaintiffs' negligence claim; otherwise affirmed.