***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted July 26, affirmed September 21, 2022, petition for review
denied January 19, 2023 (370 Or 714)

Leo GRANDMONTAGNE,
*Plaintiff-Appellant,*

*v.*

Carolyn Jean HOGAN,
Personal Representative of
the Estate of Walter B. Hogan,
*Defendant-Respondent.*

Coos County Circuit Court
19CV35235; A174226

Brett A. Pruess, Judge.

Manuel C. Hernandez argued the cause for appellant. Also on the briefs was Hernandez and Associates, LLC.

Casey S. Murdock argued the cause for respondent. Also on the brief were Tracy M. McGovern and Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

Plaintiff Leo Grandmontagne brought this action against defendant, alleging that defendant had committed legal malpractice and deceit in connection with representing Grandmontagne in a quiet-title action.[1] The trial court granted summary judgment for defendant on both claims. It concluded that Grandmontagne could not prevail on either claim because, by application of the doctrine of issue preclusion, Grandmontagne could not prove causation or damages. Grandmontagne appeals, challenging the grant of summary judgment. He argues that the trial court erred in its application of the doctrine of issue preclusion. We affirm.

## FACTS

This case has an extensive factual and procedural history, such that even a brief summary of the facts is lengthy. Given the particular posture of this case, however, we are inclined to be clear with the parties about the facts on which we rely and the legal arguments that we are addressing. We therefore summarize the basic facts before explaining our analysis. In doing so, we view the record in the light most favorable to the nonmoving party, Grandmontagne. ORCP 47 C. We consider only the evidence in the summary judgment record; our task is fundamentally to determine whether the trial court erred in ruling as it did, and the trial court's ruling was based on the materials in the summary judgment record. *See U.S. Bank National Association v. Vettrus*, 285 Or App 629, 637-38, 397 P3d 68 (2017) (stating, on review of a summary judgment ruling, that we cannot "consider new potential evidence for the first time on appeal").

In 1985, Gordon Hayes purchased Tax Lot (TL) 200, a 117-acre parcel in Coos County. Hayes also owned TL 101, which was adjacent to and immediately east of TL 200.

---

[1] Because we discuss several different legal cases involving Grandmontagne in this opinion, we refer to him herein as "Grandmontagne," rather than "plaintiff," to avoid confusion. Defendant Walter Hogan died during the pendency of this action, and the personal representative of his estate is now the defendant. We refer to both Hogan and the personal representative as "defendant."

Shortly after buying TL 200, Hayes built a road on TL 200, which the parties call the "northern access road."

In 1988, Hayes conveyed an undivided one-half interest in TL 200 to Grandmontagne, who was his cousin and business partner. At the time, Grandmontagne owned TL 201 and TL 202, which were adjacent to and immediately south of TL 200.

Grandmontagne and Hayes's relationship became strained. In 1992, Grandmontagne filed an action against Hayes—*Grandmontagne v. Hayes*, Case No. 92CV0914—in which Grandmontagne asserted various claims regarding TL 200, and Hayes asserted counterclaims. The parties stipulated to a partition of TL 200, but they disagreed on how to divide it. At trial, as relevant here, there was testimony that Hayes used the northern access road and that Grandmontagne did not. In its 1993 judgment, the partition court rejected both parties' suggested means of division and instead took an approach that would minimize ongoing "entanglement." It divided TL 200 into "equal halves, north and south." Grandmontagne became the owner of the southern half of TL 200, which kept the number TL 200. Hayes became the owner of the northern half of TL 200, which was renumbered TL 101, and existing TL 101 was renumbered TL 102. That method of division meant that Hayes would own most of the northern access road. As for the small portion of the road that passed through Grandmontagne's newly divided property, the court gave Hayes an easement to continue his existing uses of the road, and it ordered Hayes to install gates at each end of the easement. Grandmontagne was not given any rights on Hayes's property. Eventually, after much delay, a boundary line adjustment was recorded, which was later corrected to fix an accidental reversal of the two property descriptions.

The following excerpt from a map in the summary judgment record shows the locations of the various lots. After partition, Hayes owned the northern half of original TL 200 (hash-marked; renumbered TL 101) and TL 101 (solid white; renumbered TL 102), and Grandmontagne owned the southern half of original TL 200, TL 201, and TL 202 (all solid grey):



After the 1993 partition, Grandmontagne used the northern access road on TL 101, despite Hayes's efforts to stop him. Hayes put locks on the gates at each end of the easement, which Grandmontagne would cut or shoot off. Hayes called the sheriff's office, which declined to get involved in what it considered a civil dispute.

In 2015, Hayes died, and his sister Sharon Brickey inherited TL 101 and TL 102. In June 2017, Brickey filed a quiet-title action against Grandmontagne. *Brickey v. Grandmontagne*, Case No. 17CV26463. Without getting into details that are not relevant to the issues on appeal, suffice it to say that, viewing the summary judgment record in the light most favorable to Grandmontagne, Grandmontagne retained defendant to represent him in the quiet-title action, and defendant negligently or intentionally failed to do so, including failing to appear. In October 2017, the trial court entered a default order and judgment in the quiet-title action, including finding that Grandmontagne did not have an easement to use the northern access road and ordering that he had no right to use the northern access road.

In March 2018, Grandmontagne cut the locks off Brickey's gates and used the northern access road. He was subsequently arrested and charged with second-degree criminal mischief and second-degree criminal trespass in *State v. Grandmontagne*, Case No. 18CR19433. Grandmontagne's defense theory was that he was unaware of the default judgment in the quiet-title action and that he reasonably believed that he had the right to use the northern access road and to damage Brickey's locks to gain access. The criminal court was reluctant to allow Grandmontagne to litigate the easement issue in the criminal trial, taking the view that any easement claim should have been litigated in the quiet-title action. However, the criminal court ultimately ruled that, if Grandmontagne moved to overturn the default judgment in the quiet-title action, based on his not knowing about the default judgment, then Grandmontagne could present evidence in the criminal trial that he did not know about the default judgment.

Less than a week later, on September 13, 2018, Grandmontagne moved to set aside the default judgment

in the quiet-title action, asserting that he had not known about the default judgment. While that motion was pending, the criminal case proceeded to trial. Evidence of Grandmontagne's personal knowledge of the default judgment was admitted during the criminal trial, and the jury was asked to make a finding on that issue. Grandmontagne was convicted on both counts on September 18, 2018. The jury specifically found that Grandmontagne was "aware[] that he did not have the right to enter or remain on [Brickey's] premises" and "knew the court had taken away his right to use the access road"; that Grandmontagne "intentionally damaged" Brickey's gate locks; and that Grandmontagne "had no right, nor reasonable ground to believe that he had such a right, to damage the property." Grandmontagne appealed the judgment of conviction, and we affirmed in *State v. Grandmontagne*, 304 Or App 724, 473 P3d 151 (2020).

A month after the criminal trial, in late October 2018, the quiet-title court denied Grandmontagne's motion to set aside the default judgment. The court cited multiple considerations for the denial, including that Grandmontagne did not act with reasonable diligence in moving to set aside, that Grandmontagne's failure to appear was not excusable under the circumstances, and that Grandmontagne likely could not prevail on his easement claims on the merits. Grandmontagne did not pursue an appeal.

In August 2019, Grandmontagne filed this action against defendant. The operative complaint alleges two claims: (1) a claim for legal malpractice, based on defendant having failed to appear in the quiet-title action on Grandmontagne's behalf and having failed to adequately communicate with Grandmontagne at key points, including failing to notify Grandmontagne of the entry of a default judgment; and (2) a claim for deceit, based on defendant having falsely told Grandmontagne that he was representing him in the quiet-title action and having concealed key information from Grandmontagne, including that a default judgment had been entered. On the first claim, as damages, Grandmontagne sought $180,000 for, essentially, his loss of the right to use the northern access road, and another $25,000 for "embarrassment and humiliation" and defense costs in the criminal case, resulting from defendant's failure

to notify him of the default judgment. On the second claim, as damages, Grandmontagne sought $197,000, on essentially the same two damages theories.

Defendant moved for summary judgment on both claims. In June 2020, the trial court granted the motion. Applying the doctrine of issue preclusion, the court agreed with defendant that Grandmontagne could not prove causation or damages and therefore could not prevail on his claims. The court reasoned that Grandmontagne could not prove that defendant's conduct caused him to lose the right to use the northern access road, because any right that Grandmontagne had to use that road was extinguished by the 1993 partition judgment, as reaffirmed by the 2017 quiet-title judgment. And the court reasoned that Grandmontagne could not prove damages in connection with the criminal case, because the jury in the criminal case specifically found that Grandmontagne knew of the default judgment at the time of the trespass and lock-cutting incident that led to his convictions. Because Grandmontagne could not prove causation and had no viable damages theory (after application of issue preclusion), the court granted summary judgment to defendant on both claims.

The court entered a general judgment for defendant, which Grandmontagne appeals, assigning error to the grant of summary judgment.

## ANALYSIS

We begin with a procedural issue. Defendant argues that Grandmontagne did not clearly assign error to the summary judgment ruling on the legal malpractice claim in his opening brief and that we therefore should review only the ruling on the deceit claim. *See* ORAP 5.45(1) (stating requirements for opening briefs, including how to assign error). We are unpersuaded. Defendant filed a motion for summary judgment on the legal malpractice claim. Grandmontagne then added a deceit claim (by amended complaint), and defendant filed a supplemental motion for summary judgment on the deceit claim. The trial court treated the two motions as a single motion, granting summary judgment on both claims, for essentially identical reasons, in a single opinion that granted defendant's "MOTION FOR

SUMMARY JUDGMENT." Although the "Preservation of Error" section in Grandmontagne's opening brief on appeal contains an inartful statement (referring only to the supplemental motion), it is abundantly clear from the opening brief as a whole that he is assigning error to the summary judgment ruling on both claims. We therefore proceed to review the ruling as to both claims. *See Timber Town Living, Inc. v. Dept. of Human Services*, 320 Or App 154, 158, 513 P3d 28 (2022) ("[I]f a claim of error is discernible from the opening brief, we will typically address it, notwithstanding noncompliance with ORAP 5.45.").

Summary judgment is to be granted when "the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C. Here, the trial court granted summary judgment for defendant based on Grandmontagne's inability to prove causation or damages, given the application of issue preclusion to both of his damages theories. Causation and damages are necessary elements of a claim for legal malpractice, *Stevens v. Bispham*, 316 Or 221, 227, 851 P2d 556 (1993), and a claim for deceit, *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 405-06, 737 P2d 595 (1987).

Issue preclusion is a jurisprudential rule that promotes judicial efficiency by precluding parties from relitigating an issue of ultimate fact that has already been decided by a valid and final determination in a prior proceeding. *Hancock v. Pioneer Asphalt, Inc.*, 276 Or App 875, 880, 369 P3d 1188 (2016). There are five requirements for issue preclusion to apply:

(1)  The issue in the two proceedings must be identical;

(2)  The issue must have been actually litigated and essential to a final decision on the merits in the prior proceeding;

(3)  The party against whom issue preclusion is asserted must have had a full and fair opportunity to be heard on that issue in the prior proceeding;

(4)   The party against whom issue preclusion is asserted must have been a party (or be in privity with a party) to the prior proceeding; and

(5)   The prior proceeding must be the type of proceeding to which this court will give preclusive effect.

*Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993); *see also Barackman v. Anderson*, 214 Or App 660, 667, 167 P3d 994 (2007), *rev den*, 344 Or 401 (2008) ("[T]he party asserting issue preclusion bears the burden of proof on the first, second, and fourth factors, after which the party against whom preclusion is asserted has the burden on the third and fifth factors.").

The trial court concluded that all five requirements for issue preclusion were met, both as to Grandmontagne's road-access damages theory and as to his criminal-charges damages theory. *See Johnson & Lechman-Su, P.C. v. Sternberg*, 272 Or App 243, 246, 355 P3d 187 (2015) (explaining that, at summary judgment, "issue preclusion applies as a matter of law only if it can be conclusively determined from the record that all the *Nelson* requirements are satisfied" (internal quotation marks and brackets omitted)). Of course, we review only those aspects of the court's reasoning that are challenged on appeal, and we do so for errors of law. *See State Farm v. Century Home*, 275 Or 97, 105, 550 P2d 1185 (1976) ("[T]he question on review is whether the evidence is sufficient as a *matter of law* to establish the elements of collateral estoppel." (Emphasis in original.)).

In his opening brief, Grandmontagne argues that the trial court erred in its assessment of the first requirement (identical issue) and the third requirement (full and fair opportunity). In his reply brief, Grandmontagne raises a new argument regarding the second requirement (actually litigated). The fourth requirement (party or in privity) is not at issue, as Grandmontagne was a party to the 1992 partition action, the 2017 quiet-title action, and the 2018 criminal action, and he does not contend otherwise.[2] The

---

[2] We note that it is irrelevant that *defendant* was not a party to the prior proceedings. Only the party against whom issue preclusion is asserted must have been a party (or in privity with a party) to the prior proceedings. *Nelson*, 318 Or at 104.

fifth requirement (type of proceeding) also is not at issue on appeal, as no argument is made as to that requirement.

Regarding the first requirement—that the issue in the two proceedings must be identical—Grandmontagne argues that the "issue" in this action is not identical to the "issue" in prior actions, because the issue in this action is "deceit and legal malpractice," whereas the issue in the partition action was "a lot partition," the issue in the quiet-title action was "the Quiet Title of any and all interest claimed in TL 101," and the issue in the criminal case was "Grandmontagne's arrest for Criminal Trespass and Criminal Mischief." That argument depends on too narrow a view of what an "issue" is for purposes of issue preclusion. *See State v. Hunt*, 161 Or App 338, 342, 985 P2d 832 (1999), *rev den*, 330 Or 281 (2000) (equating an "issue" with a "precise question" that was raised and determined in a prior action); *see also, e.g.*, *Minihan v. Stiglich*, 258 Or App 839, 857, 311 P3d 922 (2013) (identifying the relevant "issue" in a quiet-title action as "the location of the boundary line," and concluding that the "identical issue" had been litigated in a previous trespass and ejectment proceeding); *Shuler v. Distribution Trucking Co.*, 164 Or App 615, 626, 994 P2d 167 (1999), *rev den*, 330 Or 375 (2000) (identifying the relevant "issue" as "whether plaintiff's discharge was retaliatory or was based on misconduct," which was "identical" to an issue that was litigated previously).

In the criminal case, the jury specifically found that Grandmontagne knew of the default judgment before he committed the criminal mischief and trespass for which he was convicted. For Grandmontagne to prevail on his criminal-charges damages theory in this action, the fact finder would have to find that Grandmontagne did not know of the default judgment before he committed the criminal mischief and trespass for which he was convicted. Whether Grandmontagne knew of the default judgment before he engaged in the conduct that led to his criminal convictions is the same factual *issue*, regardless of whether that fact is relevant for different purposes in two different proceedings (to prove criminal intent in a criminal case, and to prove damages for legal malpractice and deceit in a civil case). *See Underwood v. City of Portland*, 319 Or App 648, 655, 510 P3d

918 (2022) (where a jury had previously rejected the plaintiff's self-defense argument in a criminal case, the plaintiff was precluded from relitigating whether his use of force was justified in a civil case because it was the same "issue").

Similarly, in the 1993 action, the trial court partitioned original TL 200, awarding the northern half to Hayes, without any rights to Grandmontagne, and awarding the southern half to Grandmontagne, with an easement for Hayes to use the portion of the northern access road that passed through Grandmontagne's property. One "issue" essential to the court's partition decision was who would own the part of TL 200 where the northern access road was located and, relatedly, whether any easements were necessary to effectuate the intended division of rights. It would be inconsistent with the partition court's resolution of that issue for a factfinder to now find in this action that Grandmontagne had an easement on TL 101 (Hayes's property) from 1993 until 2017, at which time it was lost in the quiet-title action. Again, the relevant "issue" is the same, even though the legal claims in each action are different. *See Marshall v. PricewaterhouseCoopers, LLP*, 316 Or App 610, 621-22, 504 P3d 1236 (2021) (applying issue preclusion in an action for breach of contract and negligence, where "identical issues" were decided in previous tax litigation).

Turning to the third requirement for issue preclusion—that the party against whom issue preclusion is asserted must have had a full and fair opportunity to be heard on that issue in the prior proceeding—on appeal Grandmontagne argues that he did not have a full and fair opportunity to be heard in the quiet-title action, pointing to "newly discovered" evidence that the property descriptions in the post-partition boundary line adjustment deed were accidentally switched. That argument does not appear to be preserved, *i.e.*, it was not raised in Grandmontagne's opposition to summary judgment. Moreover, the record shows that Grandmontagne did bring the switched property descriptions to the quiet-title court's attention in the set-aside proceeding. The quiet-title court deemed it irrelevant "whether the correct deed was ever recorded," because Grandmontagne was a party to the 1993 partition action, as well as noting that the judgment itself was recorded.

That leaves the second requirement for issue pre-clusion—that the issue must have been actually litigated and essential to a final decision on the merits in the prior proceeding. Grandmontagne made no argument on the second requirement in his opening brief but, in his reply brief, argues that the quiet-title action was not actually litigated, because, by nature, a default judgment is not actually lit-igated. We normally will not consider an issue raised for the first time in a reply brief. *Federal National Mortgage Association v. Goodrich*, 275 Or App 77, 86, 364 P3d 696 (2015). The five requirements for issue preclusion are dis-tinct, and each requires a unique determination, so any challenge to the trial court's ruling based on the second requirement should have been raised in the opening brief.

Moreover, even if we were to disregard the belated nature of Grandmontagne's "actually litigated" argument, it is inadequately developed for consideration, in that it relies on *In re Gottheiner*, 703 F2d 1136, 1140 (9th Cir 1983), for the proposition that default judgments lack preclusive effect, without any discussion of Oregon law. *See Gwynn v. Wilhelm*, 226 Or 606, 609, 360 P2d 312 (1961) ("The doctrine of *res judicata*, including collateral estoppel, as to matters essential to the judgment, applies to judgments by default."); *J. W. Copeland Yards v. Sheridan et al.*, 136 Or 37, 42, 296 P 838 (1931) (A "default judgment is a complete adjudi-cation of all the rights of the parties embraced in the prayer for relief and arising from the facts stated in the plead-ings[,]" so it "is as conclusive either as an estoppel or bar as a judgment in a contested case.").[3] We therefore reject the "actually litigated" argument in Grandmontagne's reply brief without further discussion.

In sum, we conclude that the trial court did not err in any of the ways claimed by Grandmontagne on appeal. Accordingly, we affirm.

Affirmed.

---

[3] We note that, in treating the quiet-title judgment as having preclusive effect, the trial court appears to have viewed the contested set-aside hearing as relevant to whether Grandmontagne had a full and fair opportunity to be heard on issues decided in the quiet-title action. We express no opinion on the propriety of that approach.